**B.H. MORTON and Thomas Kent, Plaintiffs-Appellants,**

v.

**ZIDELL EXPLORATIONS, INC., Defendant-Appellee.**

No. 81–3194.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 2, 1982.

Decided Oct. 27, 1982.

Certiorari Denied March 21, 1983.
See 103 S.Ct. 1431.

Carl R. Neil, Lindsay, Hart, Neil & Weigler, Portland, Or., for plaintiffs-appellants.

Ridgway K. Foley, Jr., Schwabe, Williamson, Wyatt, Moore & Roberts, Portland, Or., for defendant-appellee.

Before SNEED and SKOPIL, Circuit Judges, and COUGHENOUR,* District Judge.

PER CURIAM:

Morton and Kent ("appellants"), owners of a tugboat, contracted with Zidell Explorations, Inc. ("Zidell"), a shipyard, to convert their tug into a fish-processing vessel. During the course of the conversion the ship was almost completely destroyed by fire. Appellants sued for negligence, judgment was entered for Zidell, and Morton and Kent appealed. Two questions are presented here. First, is an exculpatory clause in a marine repair contract enforceable under the Supreme Court's decision in *Bisso v. Inland Waterways Corp.,* 349 U.S. 85, 75 S.Ct. 629, 99 L.Ed. 911 (1955)? We conclude that it is. Absent evidence of overreaching, exculpatory clauses in ship repair contracts are enforceable in this Circuit. *Hall-Scott Motor Car Co. v. Universal Insurance Co.,* 122 F.2d 531 (9th Cir.), *cert. denied,* 314 U.S. 690, 62 S.Ct. 360, 86 L.Ed. 552 (1941). Second, did the trial court err in allowing Zidell to introduce evidence that appellants' vessel was insured at the time of the fire? We conclude that it did not. We affirm.

## I. FACTS AND PROCEEDING BELOW

Appellants purchased an old tugboat and orally contracted with Zidell, a marine repair and construction company, to convert it into a fish freezer-processor for use in the Bristol Bay fishery. The conversion work began in the fall of 1978. By January 1979 appellants owed Zidell approximately $200,-000 for work performed. Zidell refused to continue with the work until arrangements were made to eliminate this debt and to ensure partial payments as future work progressed. To that end the parties, on January 25, 1979, executed a written fixed-price contract to govern the balance of the conversion. The agreement, drafted by Zidell's attorney, contained a "red-letter" clause exculpating Zidell from "all risks of

---

* The Honorable John C. Coughenour, United States District Judge for the Western District of Washington, sitting by designation.

loss or damage ... under any circumstances whatsoever." [1]

The jury found that the written contract between the parties was in effect on May 2, 1979, the date of the fire. There was evidence presented at trial from which the jury could conclude that the "red-letter" clause was placed in the first paragraph of the contract to assure its prominence, that appellants were knowledgeable businessmen, and that they read and signed the agreement without expressing any reservations.

Appellants did not secure interim financing and satisfy their $200,000 indebtedness to Zidell until early March 1979. Under the contract, Zidell was not obligated to proceed with the conversion until such payment was made and, in fact, Zidell stopped work on the boat until appellants brought the account current in March, whereafter work resumed.

In January 1979 appellants purchased a builders' risk insurance policy on the vessel. Although it was undisputed that the policy became effective on January 26, 1979, the day after the execution of the contract for the vessel's conversion, there was conflicting evidence presented on appellants' motives for acquiring the insurance, and on when appellants first sought to obtain the policy.

On May 2, 1979, while appellants' vessel was lying at the Zidell dock, a Zidell employee welding on one of her bulkheads ignited combustible material on the opposite side of the bulkhead, causing a fire which nearly destroyed the vessel. Appellants sued Zidell for negligence, alleging damages of approximately $300,000 to the vessel and other personal property, plus additional damages of $1,200,000 for loss of use of the vessel in the Alaska fishing season immediately following.

The parties stipulated to a bifurcated trial before United States Magistrate Edward Leavy, with the liability issues tried first to a jury. In answers to special interrogatories the jury found that Zidell's negligence was 96 percent responsible for the fire, and that appellants' negligence accounted for the balance. The jury also answered a special interrogatory concerning the efficacy of the January 25th contract, and found the agreement to have been in effect at the time of the May 2nd fire. Appellants moved for a judgment notwithstanding the verdict on the grounds that the "red-letter" clause was unenforceable as against public policy, and that the clause could not exculpate Zidell from its own negligence because it did not specifically refer to negligence or tort liability. Appellants did not renew the latter argument on appeal.

Magistrate Leavy, applying federal admiralty law,[2] denied the motion for judgment n.o.v. In so doing he found expressly that the appellants were not the victims of overreaching or unequal bargaining power. He further found that no evidence had been adduced from which it could be concluded that Zidell wielded any monopoly power in the shipyard business, nor which would allow the conclusion that appellants could not have had the subject repairs performed

---

1. The exculpatory clause is contained in the first paragraph of the agreement. It reads, in its entirety:

 "1. Pending delivery of the vessel by Second Party [Zidell] to First Party [Morton-Kent], all risk of loss of or damage to the Vessel shall be upon First Party [Morton-Kent], and all and any insurance affording coverage for perils to which the same may be exposed pending such delivery, procured or provided by First Party [Morton-Kent], shall inure to the benefit of First Party [Morton-Kent]. Second Party [Zidell] shall not, under any circumstances whatsoever, be chargeable with or liable for damages, direct or consequential, sustained by First Party [Morton-Kent] by reason of the loss of, damage to, or delays in delivery of, said Vessel."

2. The contract contained a choice-of-law clause which provided that Oregon law would govern, "subject to the jurisdiction of the Courts of the United States as to matters purely maritime in nature." The Magistrate applied federal admiralty law, and the parties do not challenge that application. We note in passing that it has long been held that ship repair or conversion contracts are governed by federal maritime law. See, e.g., New Bedford Drydock Co. v. Purdy, 258 U.S. 96, 42 S.Ct. 243, 66 L.Ed. 482 (1922).

elsewhere. Accordingly, appellants' motion was denied and judgment was entered for Zidell. Morton and Kent appeal from that judgment.

## II. THE "RED–LETTER" CLAUSE

■ The Supreme Court has held a "red-letter" clause in a tugboat towing contract to be void as against public policy. *Bisso v. Inland Waterways Corp.,* 349 U.S. 85, 75 S.Ct. 629, 99 L.Ed. 911 (1955); *Boston Metals Co. v. The S/S Winding Gulf,* 349 U.S. 122, 75 S.Ct. 649, 99 L.Ed. 933 (1955); *Dixilyn Drilling Corp. v. Crescent Towing and Salvage Co.,* 372 U.S. 697, 83 S.Ct. 967, 10 L.Ed.2d 78 (1963).[3] In *Bisso,* Inland Waterways contracted to tow Bisso's oil barge up the Mississippi. The barge collided with a bridge pier and sank. Bisso sued, alleging negligent towing. Inland sought to avoid liability, in part, in invoking a provision in the towage contract which provided that Bisso assumed "sole risk" of the towage. The Supreme Court, applying federal admiralty law, invalidated the clause. Mr. Justice Black, writing for the Court, stated the reasons for the invalidation: "(1) to discourage negligence by making wrongdoers pay damages, and (2) to protect those in need of goods or services from being overreached by others who have power to drive hard bargains." 349 U.S. at 91, 75 S.Ct. at 632. This Court has applied such a rule in the context of towage contracts. *D.R. Kincaid, Ltd. v. Trans-Pacific Towing, Inc.,* 367 F.2d 857, 858–59 (9th Cir.1966).

In their arguments both here and below the parties hotly dispute the applicability of *Bisso* and its progeny to shipyard repair cases. Appellants rely on First Circuit authority which invokes *Bisso* principles in invalidating "red-letter" clauses, while appellees seek support from Fifth Circuit decisions which uphold exculpatory clauses in the absence of evidence of overreaching. In declining to invalidate the "red-letter" clause in the contract at issue here, the trial court, finding no evidence of overreaching, followed the Fifth Circuit.

This Circuit has addressed and resolved this question. In *Hall-Scott Motor Car Co. v. Universal Insurance Co.,* 122 F.2d 531 (9th Cir.), *cert. denied,* 314 U.S. 690, 62 S.Ct. 360, 86 L.Ed. 552 (1941), the Court framed the issue as follows: "Can the parties to a maritime contract to repair a vessel validly stipulate that the repairer may be freed from the consequences of his negligence damage to the vessel in his custody for repairs?" 122 F.2d at 534. The Court concluded that they could. The relevant facts of that case are essentially identical to those before the Court here. The owner of a pleasure boat had delivered it to Hall-Scott for the installation of a new engine, under a contract which provided in part that "Hall Scott will not be held responsible for any damage to [the vessel] ... while the engine installation is being made." 122 F.2d at 533. During the course of the conversion the boat was virtually destroyed by fire. The owner's insurer paid him and sued Hall-Scott for, *inter alia,* negligence. This Court, applying federal admiralty law, reversed a judgment for the insurer and ordered judgment for Hall-Scott on the basis of the "red-letter" clause. It held that a clause which exculpates a party to a contract from his own negligence is valid if not contrary to public policy.

Although *Hall-Scott* predates *Bisso,* it is still good law in this Circuit. *Bisso* merely reaffirmed the rule applicable to tugboat towing established in *The Steamer Syracuse,* 79 U.S. (12 Wall.) 167, 20 L.Ed. 382 (1870), and *Compania de Navegacion, Interior, S.A. v. Fireman's Funds Ins. Co.,* 277 U.S. 66, 48 S.Ct. 459, 72 L.Ed. 787 (1928). 349 U.S. at 90, 75 S.Ct. at 632. The *Bisso* Court also distinguished *Sun Oil Co. v. Dalzell Towing Co.,* 287 U.S. 291, 53 S.Ct. 135, 77 L.Ed. 311 (1932), which had upheld a clause exculpating tugboat owners from liability for negligent pilotage by an employee. 349 U.S. at 92–94, 75 S.Ct. at 633–634. The *Hall-Scott* decision carefully considered those three earlier cases in concluding that public policy did not require the invalidation of that "red-letter" clause. 122 F.2d at

---

**3.** *Boston Metals* and *Dixilyn Drilling* merely   reaffirmed and applied *Bisso.*

536–37. *Bisso* merely reaffirmed the rule for towage contracts. It did not overrule *Hall-Scott sub silentio.*

■ Although contract clauses which result from overreaching will not be enforced, the trial court concluded that appellants had not been overreached. Such a finding will not be distrubed unless clearly erroneous. *See Anaconda Building Materials Co. v. Newland,* 336 F.2d 625, 628 (9th Cir.1964). Appellants argue that because their long-term financier insisted that the conversion be completed by June, and because Zidell would not release the vessel until appellants' $200,000 indebtedness was satisfied, they had no choice but to sign the written agreement. However, the evidence indicates that in signing the contract appellants neither objected to nor mentioned the "red-letter" clause. Moreover, any economic pressure to sign the contract was the product of appellants' own failure to maintain the payment schedule established by the original agreement. Finally, had appellants in fact felt victimized by the terms of the January contract there was nothing to prevent them from taking their vessel to another yard in March, when they brought their account current. Accordingly, we affirm the trial court's finding that appellants were not overreached. On these facts it is beyond the province of this Court to imply limitations or conditions on the exercise of a power to allocate risks so unmistakably expressed. We therefore reaffirm our ruling in *Hall-Scott* and hold that absent evidence of overreaching, "red-letter" clauses in ship repair contracts will be enforced. In arriving at this result we emphasize that our holding is a narrow one; in so ruling we do not purport to circumscribe *Bisso's* continued application to towage cases.

### III. THE INSURANCE ISSUE

■ At trial the Magistrate permitted Zidell to elicit evidence that appellants had obtained builders' risk insurance on their vessel sometime prior to the fire. He did so over appellants' objection that any probative value which the evidence might have had was substantially outweighed by its potential for prejudice. The trial court allowed appellants a continuing objection, and cautioned the jury to limit its consideration of the insurance evidence to the issue of whether there existed a binding contract between the parties.

Appellants took the position at trial that there was never a mutually agreed-upon written contract between the parties and, if there was, that Morton and Kent, upon leaving the office in which the agreement was signed, did not believe it to be binding. To refute these contentions Zidell adduced evidence that the principal agreement required appellants to obtain builders' risk insurance to diffuse the risk which the contract imposed on them, that the terms of the agreement signed on January 25th had essentially been agreed upon sometime prior to that date, and implied that it was more than a mere coincidence that the effective date of the insurance policy was the day after the contract's execution.

We conclude that the Magistrate ruled properly in finding the evidence relevant and probative. Evidence of liability coverage is admissible if offered for relevant purposes, Fed.R.Evid. 411. Here the jury was entitled to consider evidence relevant to the existence and binding effect of the contract. Any prejudice to appellants was outweighed by the probative value of the evidence, and was minimized by the Court's cautionary instruction. We conclude that the appellee was properly allowed to introduce evidence of appellants' risk coverage for the limited purpose of proving that appellants deemed themselves bound by the contract.

AFFIRMED.