**MIAMI STRUCTURAL IRON CORPORATION, Appellant,**

v.

**CIE NATIONALE BELGE DE T.M., Claimant of THE GAND, Appellee.**

**No. 15122.**

United States Court of Appeals Fifth Circuit.

June 30, 1955.

**567**

Sam I. Silver, Miami, Fla., Samuel C. Gainsburgh, New Orleans, La., Pallot, Silver & Mulloy, Bernard S. Mandler, Miami, Fla., of counsel, for appellant.

Henry Burnett, Fowler, White, Gillen, Yancey & Humkey, Miami, Fla., for appellee.

Before TUTTLE, Circuit Judge, and DAWKINS and SIMPSON, District Judges.

SIMPSON, District Judge.

The appellant (libelant below), as owner by assignment of 215 lift bundles of steel reinforcing bars, filed its libel in rem against the S.S. Gand, a common carrier of merchandise by water for hire, alleging shipment of the goods in good order and condition from Antwerp, Belgium on January 15, 1952 and discharge of the goods by the vessel at Port Everglades, Florida in seriously damaged condition on or about February 6, 1952, in violation of the ship's obligation as a common carrier. The appellee is the owner and claimant of the vessel. When shipped, the steel was consigned to the National City Bank of New York, with instructions to notify the appellant of arrival of the shipment at Port Everglades. During the course of the voyage the appellant became the owner of the goods by assignment.

Upon an answer generally denying pertinent allegations of the libel, and in separate defenses pleading provisions of the Bill of Lading,[1] and of the Carriage of Goods by Sea Act,[2] the libel was tried before Chief Judge Holland. Upon motion of the claimant at the close of libel-

1. "The Act of God, perils of the sea * * * civil commotions, riots, accidents or any unforeseen occurrence beyond Owners control, collisions, strandings, and other accidents of navigation excepted. Shipowners shall not be responsible for any loss, damage or claim by or resulting from any act, neglect or default of the Master, Officers, Engineers, Pilots, Stevedores and other servants or employees of the shipowners, whether in relation to the navigation or the management of the ship or otherwise * * *

"The ship shall also not be liable for any damage or loss resulting from breakage * * * for damage through stowage * * *

" * * * The ship is not responsible for any damage during the loading and discharging even if such operations are, by special agreement, effected at the ship's expense * * * "

2. The U. S. Carriage of Goods by Sea Act approved April 16, 1936, 46 U.S.C.A. § 1303(6), contains among others, the following provisions: "(6) Unless notice of

ant's case, the trial Court dismissed the libel with prejudice, stating: "I don't think the libelant has made out a prima facie case, so the motion is granted."

Whether or not prima facie proof of the right to recover was contained in libelant's testimony and proof is the controlling question on this appeal. We summarize this proof in the margin.[3]

The appellant insists that in order to make a prima facie case it was required to prove only the good order bill of lading, and the damaged condition of the goods when discharged at Port Everglades. It contends that these matters were proved, and that to meet this condition of proof, the ship had the burden affirmatively of showing that the damage was not caused by its neglect or omission; that it is not the burden of the shipper to prove the specific act of negligence causing the damage; that

the vessel must negative the presumption of its negligence created by receipt in good order and delivery in bad condition, otherwise it is responsible for the damage to the goods. The short answer to these contentions is that the libelant-appellant entirely failed to prove that the goods were discharged from the vessel in damaged condition. No showing whatever was made that the damage did not occur after discharge and prior to their inspection by the appellant's president, and prior also to the survey. The delivery to the wharf was at least a substituted delivery discharging appellee, and in such event placed the goods at their own risk in the hands of the Port Everglades Terminal Company as bailee of appellant.[4]

Additionally, the Carriage of Goods by Sea Act, 46 U.S.C.A. § 1303(6) (quoted in Footnote 2, supra) was incorporat-

---

loss or damage and the general nature of such loss or damage be given in writing to the carrier or his agent at the port of discharge before or at the time of the removal of the goods into the custody of the person entitled to delivery thereof under the contract of carriage, such removal shall be prima facie evidence of the delivery by the carrier of the goods as described in the bill of lading.

"If the loss or damage is not apparent, the notice must be given within three days of the delivery.

\* \* \* \* \* \*

"In the case of any actual or apprehended loss or damage the carrier and the receiver shall give all reasonable facilities to each other for inspecting and tallying the goods."

3. The steel, according to the bill of lading, was shipped in apparent good order and condition; when the vessel arrived at Port Everglades February 6, 1952, appellant was notified of the arrival of the shipment; appellant made no attempt to examine the shipment until 5 or 6 days later, when its president, one Berman saw the steel in a place of rest (not at shipside) on the premises of the Port Everglades Port Authority; he then noticed the damaged condition, made arrangements to have the steel moved to libelant's warehouse 25 miles away, and also to have it surveyed

for damage by a marine surveyor. The surveyor testified to damage, but refused to express any opinion as to how the steel was damaged or when or where it was damaged. The surveyor was unable to say whether he made his examination at Port Everglades or at the libelant's warehouse after the steel was removed there by agents of libelant, at libelant's direction. A comparison of the date of removal (shown by the drayage company invoices) with the date of the surveyor's examination, is not conclusive, but does indicate that he saw the steel first in appellant's warehouse. No notice of damage was given to the vessel's owners or agents until after this survey, on February 13, 1952. As indicated above, part or perhaps all of the goods had already been removed to libelant's warehouse at this time.

4. Galveston Wharf Co. v. Galveston Harrisburg & San Antonio Ry. Co., 1932, 285 U.S. 127, 52 S.Ct. 342, 76 L.Ed. 659; North American Smelting Co. v. Moller S.S. Co., 3 Cir., 1953, 204 F.2d 384; United States Smelting, Refining & Mining Co. v. Waterman S.S. Corp., D.C. E.D.La., N.O.Div., 1945, 62 F.Supp. 511, 518 affirmed 5 Cir., 1946, 155 F.2d 687, certiorari denied 329 U.S. 761, 67 S.Ct. 115, 91 L.Ed. 656; Home Ins. Co. v. Philadelphia Piers, Inc., D.C.E.D.Pa. 1951, 100 F.Supp. 348; 56 Am.Jur., Wharves, Sec. 19.

ed into the bill of lading by Paragraph 21 thereof:

"21. This Bill of Lading shall have effect subject to the provisions of the carriage of goods by sea act of the United States of America, approved April 16th, 1936, which shall be deemed to be incorporated herein, and nothing herein contained shall be deemed a surrender by the carrier of any of its rights or immunities or are (sic.) increase of any of its responsibilities or liabilities under said Act. The provisions stated in said Act (except as may be otherwise specifically provided herein) shall govern after the goods are discharged from the ship and throughout the entire time the goods are in the custody of the Carrier  *  *  *  The Carrier shall not be liable in any capacity whatsoever for any delay, non-delivery, or mis-delivery, or loss or damage to the goods occurring while the goods are not in the actual custody of the Carrier."

The only notice of loss or damage given by appellant was the letter of February 13, 1952, addressed to Port Everglades Terminal Co., (of course, inaccurately) as agents for the ship, presumably received February 14, or later, at least 6 days after discharge of the cargo and after removal of all of the cargo from shipside to another place of rest on the Port Everglades premises and after further removal of at least part of the cargo to appellant's warehouse by its admitted agent, the drayage concern.

Thus, appellant failed entirely to carry the burden of proof as to timely notice of damage.[5]

Judge Foster, writing for this Court in The Georgian, 5 Cir., 1935, 76 F.2d 550, 551, succinctly stated the purpose of such provisions for notice:

"(1) Clauses requiring notice of loss or damage to be given within a limited time are always upheld by the courts, if they are reasonable. The purpose of the clause is to allow opportunity to the vessel to investigate the claim for damage while witnesses are available, and before it is otherwise too late, in order to defend against an exaggerated or fraudulent claim.  *  *  *"

Appellant's failure to give such notice at or near the time of delivery raised, in law, a presumption of delivery of the goods as described in the bill of lading. See The Southern Cross, 1940 A.M.C. 59:

"*  *  *  Under section 3, and subdivision 6 of the Carriage of Goods by Sea Act  *  *  *  the failure to give written notice to the carrier of loss or damage, at the port of discharge, before or at the time of removal of the goods makes the removal *prima facie* evidence of the delivery by the carrier of goods as described in the bill of lading."

And Fire Association v. Isbrandtsen Company, Inc., 1950 A.M.C. 2017:

"This action is maintainable by a subrogee who may bring such suit within one year, notwithstanding the failure to give notice of a defect in the shipment within three days after delivery. Upon failure to give such notice, however, there is a presumption of good delivery in favor of the carrier, which claimant must overcome by proof."

This presumption stood unrebutted at the time appellant rested its case and the trial Court dismissed its libel with prejudice. The appellant had failed, as held by the trial Judge, to make out a prima facie case, and the trial Judge in this posture of the case before him correctly decided that the appellee had no burden to go forward with any evidence. The judgment below is, accordingly, for the reasons given,

Affirmed.

---

5. Brennan Packing Co. v. Cosmopolitan Shipping Co., D.C.N.D.E.D.Ill.1925, 14 F.2d 971; Gerli & Co. v. Cunard S.S. Co., 2 Cir., 1931, 48 F.2d 115; United States Industrial Alcohol Co. v. Calmar S.S. Corporation, 2 Cir., 1932, 57 F.2d 182, certiorari denied 287 U.S. 622, 53 S.Ct. 21, 77 L.Ed. 540.