HOME INSURANCE COMPANY,
Plaintiff,

v.

PUERTO RICO MARITIME SHIPPING AUTHORITY and Puerto Rico Marine Management, Inc., Defendants and Third-Party Plaintiffs,

v.

CAPITOL TRANSPORTATION, INC.,
Third-Party Defendant.

Civ. No. 79–0988.

United States District Court,
D. Puerto Rico.

Oct. 9, 1981.

542

Francisco Castro-Amy, San Juan, P. R., for plaintiff.

Paul E. Calvesbert, Jimenez & Fuste, Hato Rey, P. R., for defendants and third-party plaintiffs.

Daniel R. Dominguez, Lafitte & Dominguez, Hato Rey, P. R., for third-party defendant.

## MEMORANDUM OPINION AND ORDER

CEREZO, District Judge.

The instant case was tried before the Court on March 11, 1981. Plaintiff rested its case on the admitted facts stipulated by the parties on the pretrial order and the documentary evidence presented by it without any objection from the defendants and third-party defendant. Defendants and third-party defendant then raised motions under Rule 41(b) of the Federal Rules of Civil Procedure, which the Court heard and reserved its decision until the close of the evidence. Defendants and third-party defendant then proceeded to present their respective cases. In view of the forthcoming determination on the merits of this case, the Court need not resolve the motions of nonsuit based solely on plaintiff's ability to prove its case at the close of its evidence. The memoranda filed by the parties have touched upon issues, which are best explained and/or supported by the evidence introduced by the defendants and the third-party defendant. Based on all the evidence in this case, we find the following facts:

On or about January 16, 1978, plaintiff's insured Mr. Joseph A. Novak, contracted with third-party defendant Capitol Transportation, Inc. (Capitol) to move certain household goods from his home in San Juan, Puerto Rico to New York. In the morning of January 16, 1978, certain employees of Capitol went to Mr. Novak's apartment in order to pack these things. Not everything in the apartment was to be packed or moved to New York; several things had been sold or given away and had been picked up or would be picked up by their new owners. Some items were to be delivered by Capitol at another apartment in the San Juan area. Plaintiff's evidence does not establish with exactness what was packed, and where. It appears that twenty-three items were packed in boxes and mirror cartons marked with the numbers 1 through 23. Mr. Novak was present during the packing and observed how this was done. However, he could not tell, until he later noticed their absence and the absence of item 21, exactly what box or mirror carton contained the paintings, which are the object of this litigation. It appears from a work order issued by Capitol on January 16, 1978 that some paintings, a table and a glass top would be packed in separate crates, boxes or mirror cartons. Whether in crates, boxes or mirror cartons, the last time those paintings were seen by Novak was that morning, before the goods were taken downstairs and loaded into a crate that awaited in a truck. Thereafter, part of the goods were delivered to a Ms. Marilyn Wood's apartment and the rest to Capitol's warehouse. There the crate was weighed and steel-banded.[1] They remained at the Capitol warehouse until January 23, 1978. Again, they were weighed and found to weigh the same as on January 16, 1978. On January 23, 1978, defendants, the Puerto Rico Maritime Shipping Authority (PRMSA) and Puerto Rico Marine Management, Inc. (PRMMI) received from Capitol Transportation one (1) crate to be carried by sea to the port of Elizabeth, New Jersey. According to the bill of lading issued by PRMSA and PRMMI, defendants received one (1) package marked Joseph A. Novak, Sayville, Long Island, N. Y., and containing "used household goods and personal effects." This crate was transported on board the S.S. Bayamón, a vessel owned or managed by defendants on January 24, 1978 and arrived at Elizabeth, N.J., on February 7, 1978. On February 23, 1978, the crate was picked up by F. & C. Transfer (F. & C.) for Eagle Transfer Corporation (Eagle), the consignee which appeared from the bill of lading. Eagle Transfer Corporation had been contracted by Capitol at Mr. Novak's request. No exceptions were noted on the back of the delivery receipt issued for the goods. According to the testimonial evidence, the crate was sealed when picked up by F. & C. and when received by Eagle at

---

1. There were some discrepancies in the testimony of witnesses who were present throughout the packing process as to where the goods were crated and steel-banded. The Court finds that they were not crated at Mr. Novak's apartment and that the steel bands were placed around the crate at Capitol's warehouse.

its warehouse in New York City. According to Eagle's statements made to Mr. Novak, the crate was not opened until Mr. Novak himself was present at the opening, which took place on March 21, 1978. On that date, the steel bands were snipped and the crate was opened. Everything was in order and well packed. It appeared to Mr. Novak that that was the first time that the crate had been opened. However, item 21 was missing from the crate. The two paintings were also missing. At Novak's request, several efforts were made by Capitol, but the paintings could not be found. He then notified his insurer, the Home Insurance Company, which in turn compensated him in the amount of $2,500.00 for the loss of his paintings. At no time prior to July 27, 1978 were defendants notified of any claim against them regarding the lost paintings. According to Mr. Novak's testimony and from documentary evidence in the case, all prior claims had been made to Capitol, which denied any responsibility for the paintings and alleged that they had been lost "in transit." On April 23, 1978, plaintiff filed this suit against PRMSA and PRMMI. On August 9, 1979, defendants filed a third-party complaint against Capitol Transportation, Inc.

■ Although the Carriage of Goods by Sea Act (COGSA) 46 United States Code § 1300, et seq., would not apply ex proprio vigore to this case of domestic carriage, the evidence has established that the bill of lading issued in this case incorporated said Act by reference to it. This has been repeatedly held to be a permissible practice in domestic trade. 46 United States Code Section 1312. See: *Empacadora Puertorriqueña de Carnes, Inc. v. Alterman Transport Lines, Inc.*, 303 F.Supp. 474 (DPR 1969); *Fireman's Ins. Co. of Newark, New Jersey v. Gulf Puerto Rico Lines, Inc.*, 349 F.Supp. 952, 954 (DPR 1972); *Commonwealth Petrochemicals, Inc. v. S/S Puerto Rico*, 455 F.Supp. 310, 315 (D.C.Md.1978) affirmed 607 F.2d 322, 325, 328 (4th Cir. 1979). Plaintiff does not question the applicability of the Act to defendants' PRMSA and PRMMI situation. Nevertheless, it alleges that the requirement of giving the carrier (PRMSA and PRMMI) a written notice of claim within three days after the delivery of the goods, as it is stated in clause 23 of the long-form bill of lading, is contrary to the COGSA provision regarding notice of claim and therefore that said clause is null and void. Although it has been held that the parties to a domestic contract of carriage can agree to clauses which are contrary to COGSA, as long as the carrier does not relinquish his obligations under the Harter Act, 46 United States Code § 190, et seq., *Commonwealth Petrochemicals, Inc. v. S/S Puerto Rico*, 607 F.2d at 325–328, clause 1 of the same long-form bill of lading provides that "[i]f any term of this Bill of Lading be repugnant to said Act to any extent, such term shall be void to that extent but no further." Assuming, without deciding, that said clause is repugnant to the Act, defendants also base their defense on the provisions of section 1303(6) of Title 46, United States Code, and on the presumption in favor of the carrier established therein.

■ There is no doubt as to plaintiff's right to bring this action against the ocean carrier. See: *Prevor-Mayorsohn Caribbean v. Puerto Rico Marine Management, Inc.*, 620 F.2d 1, 4 (1st Cir. 1980). Plaintiff, as insurer who paid the claims of their insured and owner of the goods, could file this subrogation claim in its own name as real party in interest. See: Rule 17, Federal Rules of Civil Procedure. Section 1303(6) of Title 46 of the United States Code which requires that the carrier or his agent be given written notice of loss or damage to the cargo and of the nature of said loss or damage at the port of discharge before or at the time of the removal of the goods into the custody of the consignee, or within three days of the delivery if the loss or damage is not apparent, does not prejudice plaintiff's right to bring this action, if brought within one year after delivery of said goods. See: *Howmet Corp. v. Tokyo Shipping Co.*, 318 F.Supp. 658, 662 (D.Del. 1970); *Miami Structural Iron Corp. v. Cie. Nationale Belge de T.M.*, 224 F.2d 566, 569 (5th Cir. 1955). Nevertheless, "such remov-

al [in absence of written notice of loss or damage] shall be prima facie evidence of the delivery by the carrier of the goods as described in the bill of lading," 46 United States Code § 1303(6); *Associated Metals and Minerals Corp. v. M/V Rupert de Larrinaga*, 581 F.2d 100, 101 (5th Cir. 1978). In order to rebut this presumption plaintiff had to prove, with sufficient evidence, that the cargo was damaged *prior* to discharge by the ocean carrier, or while in its custody.[2] See: *Harbert International Establishment v. Power Shipping*, 635 F.2d 370, 373–374 (5th Cir. 1981); *Associated Metals and Minerals Corp., supra.*

■ After a careful consideration of all the evidence in this case, however scarce it is, it must be concluded that plaintiff failed to rebut the presumption established by 46 United States Code § 1303(6). The evidence showed that defendants PRMSA and PRMMI received the goods as described in the bill of lading on January 23, 1981, in a sealed crate and that these were delivered in the same sealed condition to the consignee, Eagle Transfer Corporation, through its agent F. & C. Transfer. After that, the goods remained in Eagle's warehouse almost a month before they were picked up by the owner, plaintiff's insured. Mr. Novak stated in his deposition that it appeared to him that the crate had not been opened before that time, nor tampered with. Plaintiff alleges that: "the only one who could have opened it [the crate], and packed it again with the steel bands so that it looked like untampered, would have been while it was in the possession of the ocean carrier, it therefore must come up with something else, something more to show that no such thing happened." However, the evidence shows that this is not a correct assertion, since the crate was also in the custody of Eagle Transfer for almost a month, and could have been opened and resealed by it just as well. Plaintiff's allegation, in fact, places the burden on defendants, on whose favor lies the presumption, to prove how they could not do what the

presumption and the circumstantial evidence have shown not to have occurred. In the absence of other proof, we conclude that the evidence presented indicates that the paintings were not lost "in transit" at any moment after PRMSA and PRMMI received the crate from Capitol nor while in custody of Eagle Transfer Corporation. Rather, it is more probable than not, that the paintings in question were never placed inside the crate and that they were lost prior to delivery to the defendants at some point between Mr. Novak's apartment and Capitol's warehouse. The fact that the crate weighed the same right after it was steel-banded as when it was delivered to the defendants, does not prove anything if the crate was not weighed at the time of delivery to Eagle Transfer. All this shows is that whatever was in the crate on January 16th was still there on January 23rd. Nobody could indicate exactly what was crated and nobody saw or remembered having seen the paintings being put inside the crate. Only because the paintings were missing, and so was item 21, can plaintiff assert that they were in fact packed in the crate. However, all the other evidence in this case shows that, even if item 21 were in fact the paintings in question, it was most probably never placed inside the crate. The fact that the crate was never opened until in the custody of the consignee and in the owner's presence proves that what was found in it on March 21, 1978 was all that was packed inside it on January 16, 1978 and delivered to defendants on January 23.

Although plaintiff proved its loss, it did not prove that it occurred while the cargo was in the custody of the ocean carrier and before delivery to the consignee, and it has not contradicted the prima facie evidence that the goods were delivered to the consignee in the same state as they were received by the ocean carrier. The complaint shall, therefore, be dismissed with respect to defendants Puerto Rico Maritime Shipping Authority and Puerto Rico Marine Management, Inc.

---

2. The bill of lading issued in this case extended the responsibility of PRMSA to all times during which the goods in question were in its custody.

Had this not been a case in admiralty, plaintiff's case would have been disposed of solely by the dismissal of its claims against the defendants and third-party plaintiffs. But, since the third-party plaintiffs demanded judgment against the third-party defendant in favor of the plaintiff, this action may proceed "as if the plaintiff had commenced it against the third-party defendant, as well as the third-party plaintiff." Rule 14(c), Federal Rules of Civil Procedure. The uncontroverted evidence in this case shows that the last time the paintings were seen was when the men from Capitol did the packing in Mr. Novak's apartment and that when they left the paintings were no longer there. From there on, until the time when the goods were handed over to the ocean carrier, they were Capitol's responsibility. If, as has been decided above, the paintings were never crated and thus never delivered to PRMSA and PRMMI, it follows that Capitol is responsible for their loss. Capitol's defense that this claim is time-barred by the one year statute of limitations of the Carriage of Goods by Sea Act, 46 United States Code § 1303(6), is inapplicable to this case where the evidence has established that the goods were lost prior to loading and prior to the time when they were in the custody of the ocean carrier, where COGSA was incorporated in the bill of lading which governed only after delivery to the ocean carrier and while in its custody. The Harter Act, which applied "ex proprio vigore" to this case of domestic trade, was applicable to this period before loading and delivery to the ocean carrier. See: *Gilmore and Black, The Law of Admiralty,* 2d ed., pp. 145–149 (N.Y. 1975). Said act does not contain a statute of limitation, and there was no laches on the part of the defendants in filing their action. Furthermore, Capitol has not shown any prejudice in having been brought into this action at the time this happened; this being an essential element of the defense of laches.

For these reasons, judgment is to be entered in favor of plaintiff and against Capitol Transportation, Inc. See: *Ohio River Co. v. Continental Grain Co.,* 352 F.Supp. 505, 511–512 (N.D.Ill.1972).

Wherefore, the Clerk shall enter judgment dismissing this action as to PRMSA and PRMMI and against Capitol Transportation, Inc. in the amount of $2,500.00 with costs.

SO ORDERED.