162 F.3d 571
 1999 A.M.C. 650, 98 Cal. Daily Op. Serv. 9129,
98 Daily Journal D.A.R. 12,762
 AKIYAMA CORPORATION OF AMERICA, a corporation; Vigilant
Insurance Company, a corporation and a member of
the Chubb Group of Insurance Companies,
Plaintiffs-Appellants,
v.
M.V. HANJIN MARSEILLES, her engines, tackle, machinery,
etc.; Hanjin Shipping Co. Ltd., a corporation; Total
Terminals, Inc., a corporation; and Marine Terminals
Corporation, a corporation, Defendants-Appellees.
 No. 97-16905.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 3, 1998.
Decided Dec. 16, 1998.
 
 1
 Ernest N. Reddick, Marilyn Raia, Derby, Cook, Quinby & Tweedt LLP, San Francisco, California, for plaintiffs-appellants.
 
 
 2
 Gary A. Angel, San Francisco, California, for defendant-appellee.
 
 
 3
 Appeal from the United States District Court for the Northern District of California Charles A. Legge, District Judge, Presiding. D.C. No. 96-4444 CAL.
 
 
 4
 Before: FLETCHER, and TASHIMA, Circuit Judges, and FITZGERALD,* District Judge.
 
 FITZGERALD, District Judge:
 
 5
 The Carriage of Goods by the Sea Act, 46 U.S.C.App. § 1300, et seq. (COGSA), governs the liabilities of parties to a bill of lading for the carriage of goods by the sea. COGSA strictly limits a carrier's liability, and provides: "Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package." Id. § 1304(5). A bill of lading may contractually expand COGSA coverage to third parties with a "Himalaya Clause."
 
 
 6
 Akiyama Corporation of America contracted with Hanjin Shipping Company Ltd. to ship a printing press from Tokyo to Long Beach Harbor in California. The press was carried as cargo aboard the vessel Hanjin Marseilles. Hanjin Shipping issued a bill of lading covering the shipment which noted that the press was packed in four separate cases. The bill of lading contains a clause pursuant to COGSA which limits Hanjin Shipping's liability for cargo damage. The bill of lading also contains a Himalaya Clause which extends the limitation of liability benefits to certain entities.
 
 
 7
 Hanjin Shipping contracted with Total Terminals, the operator of the terminal to which the cargo was delivered, to unload the press. Total Terminals, in turn, hired the stevedore, Marine Terminals Corporation, to unload the press. On September 13, 1995, while Marine Terminals was unloading the vessel, one section of the press came out of the stevedore slings and fell into the vessel cargo hold where it landed on the remaining sections of the press. Akiyama claimed that the press was severely damaged, resulting in a property loss of $1 million.
 
 
 8
 Akiyama and Vigilant Insurance Company filed an action for damage to cargo and an admiralty and maritime claim against the M/V Hanjin Marseilles, Hanjin Shipping, Total Terminals, and Marine Terminals, seeking $1,000,000 in damages to the press. Total Terminals and Marine Terminals filed a motion for partial summary judgment arguing that their liability should be limited to $500 per package because they were entitled to protection under the terms of the Hanjin Shipping bill of lading. The district court found in favor of Total Terminals and Marine Terminals and entered judgment in the amount of $2000 ($500 per package).
 
 
 9
 A grant of summary judgment is reviewed de novo. See Covey v. Hollydale Mobilehome Estates, 116 F.3d 830, 834 (9th Cir.1997), superseded on other grounds, 125 F.3d 1281 (9th Cir.1997). We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. See id.
 
 
 10
 Initially, we note that under COGSA, a carrier (Hanjin Shipping) may limit its liability to $500 per package if the shipper (Akiyama) is given a fair opportunity to opt out of the limitation by declaring an excess value and paying a higher rate. See Mori Seiki USA, Inc. v. M.V. Alligator Triumph, 990 F.2d 444, 448 (9th Cir.1993). Akiyama has not argued that it did not have a fair opportunity to opt out of the limitation, and in any event, Akiyama's decision to insure the cargo with Vigilant constitutes a "conscious decision not to opt out of COGSA's liability limitation." Travelers Indem. Co. v. Vessel Sam Houston, 26 F.3d 895, 900 (9th Cir.1994).
 
 
 11
 The parties do not dispute that COGSA governs and is incorporated into Hanjin Shipping's bill of lading. It is also undisputed that the bill of lading contains a Himalaya Clause. The question, then, is whether the Himalaya Clause extends COGSA's limitation of liability to Total Terminals and Marine Terminals.
 
 
 12
 Himalaya Clauses must be "strictly construed and limited to intended beneficiaries." Certain Underwriters at Lloyds' v. Barber Blue Sea Line, 675 F.2d 266 (11th Cir.1982) (quoting Robert C. Herd & Co. v. Krawill Machinery Corp., 359 U.S. 297, 305, 79 S.Ct. 766, 3 L.Ed.2d 820 (1959)). The intent to extend COGSA benefits must be clearly expressed. See Taisho Marine & Fire Ins. Co. v. Vessel Gladiolus, 762 F.2d 1364, 1366 (9th Cir.1985). When a party seeking protection under a Himalaya Clause is not specifically mentioned therein, the party should, at a minimum, be included in a well-defined class of readily identifiable persons to which COGSA benefits are extended under the terms of the clause. See id. at 1367.
 
 
 13
 In Mori Seiki, the court identified three factors to consider in determining the intent of the contracting parties. First, "whether a bill of lading extends limitations of liability to [third parties] depends on whether the clarity of the language used expresses such to be the understanding of the contracting parties." Mori Seiki, 990 F.2d at 450 (internal quotations omitted). The other two considerations involve " 'the contractual relation between the party seeking protection and the ocean carrier, as well as the nature of the services performed compared to the carriers responsibilities under the carriage contract.' " Id. at 450 (quoting Taisho Marine & Fire Ins., 762 F.2d at 1367).
 
 
 14
 Hanjin Shipping's bill of lading identifies terminal operators and stevedores and "the agents of each of them" as subcontractors. The Himalaya Clause of the bill of lading provides that "[e]very servant, agent and sub-contractor ... and the agents of each shall have the benefit of all provisions herein for the benefit of the Carrier as if the provisions were expressly for their benefit; and in entering into this contract of carriage, the Carrier does so not only on his own behalf but also as agent for all such servants, agents and subcontractors to the fullest extent permitted by the law applicable to Himalaya Clauses."
 
 
 15
 Clearly, the bill of lading extends its benefits and protections to terminal operators and stevedores. The definition of "Subcontractor" includes terminal operators and stevedores, and the Himalaya Clause specifically extends the bill of lading benefits to subcontractors.
 
 
 16
 Appellants argue that the entities identified in the "Subcontractor" definition must be in privity of contract with the ocean or inland carrier. The definition states, however, that only "other persons", as opposed to those specifically identified, such as terminal operators and stevedores, need to be performing services pursuant to a contract with Hanjin Shipping to fit within the meaning of "Subcontractor." Regardless of the definition, the Himalaya Clause itself specifically includes stevedores, such as Marine Terminals, and independent contractors, which includes Total Terminals.
 
 
 17
 We reject appellants' argument that privity of contract is required in order to benefit from a Himalaya Clause. Rather, the proper test is to consider "the nature of the services performed compared to the carrier's responsibility under the carriage contract." Taisho Marine, 762 F.2d at 1367. Here, terminal operations and stevedoring are services that are Hanjin Shipping's responsibility. Total Terminals contracted with Hanjin Shipping to perform those services, and Marine Terminals stevedored the cargo pursuant to an agreement with Total Terminals. Clearly, Total Terminals is an independent contractor as set forth in the Himalaya Clause, and Marine Terminals acted as an agent of Total Terminals and is also covered by the Himalaya Clause. See Barber Blue Sea Line, 675 F.2d at 270 ("When a bill refers to a class of persons such as 'agents' and 'independent contractors' it is clear that the contract includes all those persons engaged by the carrier to perform the functions and duties of the carrier within the scope of the carriage contract. No further degree of clarity is necessary.") If Total Terminals and Marine Terminals were excluded from the extension of COGSA coverage, "the Himalaya Clause would be rendered extraordinarily empty." Institute of London Underwriters v. Sea-Land Service, Inc., 881 F.2d 761, 767 (9th Cir.1989). Appellants have simply failed to demonstrate that the Himalaya Clause is ambiguous.
 
 
 18
 Appellants' line by line break down of the Himalaya Clause and in depth analysis of the use of lower case "s" and upper case "S" obfuscates the plain reading and clear intent of the bill of lading and Himalaya Clause. The relevant paragraphs of the bill of lading clearly show that terminal operators and stevedores are included within the definition of subcontractor, a term found within the Himalaya Clause. Stevedores and independent contractors are also expressly named in and protected by the Himalaya Clause. The Himalaya Clause is unambiguous and clearly extends COGSA's limitation of liability to Marine Terminals and Total Terminals. Accordingly, the $500 per package limitation applies to Total Terminals and Marine Terminals.
 
 
 19
 AFFIRMED.
 
 
 
 *
 The Honorable James M. Fitzgerald, Senior United States District Judge for the District of Alaska, sitting by designation