**ROYAL INSURANCE COMPANY OF AMERICA, a business entity, Plaintiff–Appellant,**

v.

**SOUTHWEST MARINE, a business entity, dba South Bay Boat Yard; Does 1 through 5, Defendants–Appellees.**

**Royal Insurance Company of America, a business entity, Plaintiff–Appellant,**

v.

**Southwest Marine, a business entity, dba South Bay Boat Yard; Does 1 through 5, Defendants–Appellees,**

v.

**American Rigging Company, Inc., a corporation; MacWhyte Company, a Division of Amsted Industries, Inc.; Accredited Certified Associates, Third-party–Defendants–Appellees.**

Royal Insurance Company of America, a business entity, Plaintiff–Appellant,

v.

David M. Garthwaite, aka David Garthwaite, Jr.; David Garthwaite, Sr., aka David Garthwaite, Counter–Claimants–Appellees,

v.

Southwest Marine, a business entity, dba South Bay Boat Yard; Does 1 through 5, Defendants–Appellees,

v.

American Rigging Company, Inc., a corporation; MacWhyte Company, a Division of Amsted Industries, Inc.; Accredited Certified Associates, Third-party–Defendants–Appellees.

Nos. 97–55692, 97–56236 and 98–55407.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 5, 1999.

Filed Oct. 14, 1999.

Geoffrey W. Gill, Kirlin, Campbell & Keating, Long Beach, California, for the plaintiff-appellant.

Daniel B. MacLeod, San Diego, California, for the defendant-appellee.

John R. Clifford and Lisa M. Cross, Drath, Clifford, Murphy, Wennerholm & Hagen, San Diego, California, for Accredited Certified Associates.

John F. Watkins, Watkins, Watkins & Atherton, Glendora, California, for the amicus.

Before: HUG, Chief Judge, BROWNING and FERGUSON, Circuit Judges.

BROWNING, Circuit Judge:

## I.

In 1993, David Garthwaite, owner of the yacht SUNAIR, entered into two agreements with Southwest Marine relating to the renovation of SUNAIR: (1) a "Do It Yourself Agreement" providing that Garthwaite would rent space at Southwest Marine's boat yard as the site of the renovation to be completed by an outside contractor; and (2) a "Vessel Repair Order" fixing hourly rates for various services to be provided by Southwest, including crane service.

In 1994, Southwest lifted the SUNAIR from the water and placed it in a storage cradle for renovation. The lift occurred without incident. The renovation was completed in 1995 and, following sea trials, Southwest returned SUNAIR to its storage cradle for final repairs. As Southwest was lifting SUNAIR from the water, the winch drum on the crane cracked, and the yacht dropped a few inches. The SUNAIR was unharmed, but the crane suffered serious damage.

Southwest hired American Rigging Company to repair the crane. American Rigging fixed the winch drum and, together with Southwest personnel, installed a new wire rope. Southwest then hired Ac-

credited Certified Associates to inspect the crane.

Southwest attempted to relaunch SU-NAIR one day after the crane was repaired. The wire rope snapped, and SU-NAIR dropped several feet to the water. Moments later, the boom of the crane crashed onto SUNAIR's deck, causing more than $900,000 in damage.

Royal Insurance Company, the insurer of SUNAIR, compensated Garthwaite for the damage to the yacht and filed suit as Garthwaite's subrogee against Southwest for breach of contract, breach of warranty, and negligence. Royal subsequently amended its complaint to assert additional claims against Southwest for negligent and intentional misrepresentation.[1] Southwest filed a third-party complaint against American Rigging. American Rigging, in turn, filed a third-party complaint against Accredited.

The district court granted summary judgment for Southwest based on an exculpatory clause in Garthwaite's rental agreement with Southwest, and denied Royal's motion to file an amended complaint to assert claims against Southwest for trespass, conversion, and bailment. The district court also granted judgment on the pleadings in favor of the third-party defendants, American Rigging and Accredited.

■■■ Royal appeals (1) summary judgment in favor of defendant Southwest Marine, (2) denial of Royal's motion to file a third amended complaint, and (3) judgment on the pleadings in favor of third-party defendants American Rigging and Accredited.[2] We affirm in part, reverse in part, and remand.

## II.

Both agreements contain exculpatory clauses purporting to release Southwest from all liability.[3] The district court sum-

---

1. Royal actually amended its complaint twice-once to correct minor deficiencies in the original complaint, and once to assert additional claims against Southwest.

2. The orders granting Southwest's motion for summary judgment and denying Royal's motion to amend its complaint are interlocutory. Ordinarily, interlocutory orders are not appealable, but 28 U.S.C. § 1292(a)(3) "creates an exception to the final judgment rule for orders determining the rights and liabilities of the parties to admiralty cases." *Kesselring v. F/T Arctic Hero*, 30 F.3d 1123, 1125 (9th Cir.1994). The order granting summary judgment is appealable because "[a] partial summary judgment order which finally determines one party's claims as to another party is appealable under section 1292(a)(3)." *All Alaskan Seafoods, Inc. v. M/V SEA PRODUCER*, 882 F.2d 425, 427 (9th Cir.1989). The order denying leave to amend is also appealable because it effectively dismissed Royal's claims against Southwest for trespass, conversion, and bailment.

3. The rental agreement provided:
   12. *Indemnity.* Owner [Garthwaite] agrees to hold SBBY [Southwest], its affiliates, and its respective officers, agents and employees free and harmless and indemnify it from all claims, losses, damages, liabilities or expenses including reasonable attorneys' fees incurred in the defense thereof for death or injury to any person or persons including employees of Owner or damage or destruction of any property including property of Owner relating to the use and occupancy of the Designated Space and resulting directly or indirectly from the performance of this Agreement and regardless of whether such death, injury or property damages is caused in whole or in part by the negligence of SBBY, its agents or employees this indemnification shall include without limitation all court and/or arbitration costs, attorney's fees and costs of settlement or judgment.
   The repair order provided:
   8. OWNERS ASSUMPTION OF RISK. (a) Except as provided in paragraphs 2 and 6 above [relating to warranties and exclusive remedies for breach], Owner accepts the risk of all losses hereafter occasioned by the acts or omissions of Contractor in the performance of the Work, whether in the nature of negligence, strict liability, or otherwise, and agrees to purchase, and maintain such insurance against such risks as Owner deems prudent and shall look only to said insurance for compensation or damages related to any such loss regardless of the legal or physical responsibility hereof .... (b) Owner accepts the risk of and Contractor shall not be liable under any circumstances for, any incidental, special or consequential damages of any nature whatsoever, ... whether such damages be predicated upon

marily dismissed Royal's claims against Southwest, concluding they were precluded by the exculpatory clause in the rental agreement. Royal challenges that ruling.

Royal argues that the exculpatory clauses were procured by "overreaching." Specifically, Royal contends that Garthwaite's attorney objected to exculpatory language during earlier, unsuccessful negotiations with Southwest and, although aware that exculpatory language was not acceptable to Garthwaite, Southwest "deliberate[ly] bypassed" Garthwaite's attorney, inserted the exculpatory language, and "extracted Garthwaite's signature" without counsel.

■■■ "Clear precedent holds that, 'absent evidence of overreaching, clauses limiting liability in ship repair contracts will be enforced.'" *Arcwel Marine, Inc. v. Southwest Marine, Inc.*, 816 F.2d 468, 471 (9th Cir.1987) (quoting *M/V American Queen v. San Diego Marine Constr. Corp.*, 708 F.2d 1483, 1488 (9th Cir.1983)). However, we have refused to invalidate an exculpatory provision in a ship repair contract where the ship's owner "assented without complaint to the terms of the agreement." *M/V American Queen*, 708 F.2d at 1488. Even if Garthwaite objected to an exculpatory provision during contract negotiations, he ultimately "assented without complaint." Under these circumstances, Southwest's conduct cannot be characterized as overreaching. *See id.; see also Morton v. Zidell Explorations, Inc.*, 695 F.2d 347, 351 (9th Cir.1982) (no overreaching found where ship owners failed to object to exculpatory provision and pressure to execute agreement resulted from owners' own conduct).

■■■ Royal argues that the exculpatory clauses are against public policy and void because they purport to absolve Southwest of *all* liability. Other circuits may adhere to that rule,[4] but the Ninth Circuit has weighed the policy considerations, *see Morton*, 695 F.2d at 350, and concluded that, except in towing contracts,[5] exculpatory clauses are enforceable even when they completely absolve parties from liability for negligence, *see, e.g., Arcwel Marine*, 816 F.2d at 470 (enforcing provision exculpating party from "any loss"); *M/V American Queen*, 708 F.2d at 1488 ("It is well settled that in admiralty law, the parties to a repair contract may validly stipulate that the shipowner is to assume *all* liability for damage occasioned by the negligence of the shipyard." (emphasis added)).

Royal argues that Southwest was using SUNAIR as a test weight for the boom portion of the newly-repaired crane when the accident occurred despite assurances to SUNAIR's captain that the yacht would not be used as a test weight; that this conduct amounted to deliberate misconduct or gross negligence; and that the exculpatory clauses cannot shield Southwest from liability for such conduct.

No court of appeals has held an exculpatory clause in a maritime contract inapplicable to gross negligence. The First and Fifth Circuits have indicated that exculpatory clauses do not cover gross negligence, but concluded that such conduct had not been established in the particular cases. *See La Esperanza De P.R., Inc. v. Perez y Cia. De Puerto Rico, Inc.*, 124 F.3d 10, 19 (1st Cir.1997); *Todd Shipyards Corp. v. Turbine Serv., Inc.*, 674 F.2d 401, 411 (5th Cir.1982). The issue remains unresolved in the Ninth Circuit. *See M/V American*

---

an alleged breach of this Agreement, negligence by the Contractor, strict liability in tort, or upon any other basis whatsoever.

4. *See, e.g., La Esperanza De P.R., Inc. v. Perez y Cia. De Puerto Rico, Inc.*, 124 F.3d 10, 19 (1st Cir.1997) ("[C]ourts today will enforce red letter clauses that are expressed clearly in contracts entered into freely by parties of equal bargaining power, *provided that the*

*clause does not provide for a total absolution of liability.*" (emphasis added) (citing *Edward Leasing Corp. v. Uhlig & Assocs., Inc.*, 785 F.2d 877, 888–89 (11th Cir.1986))).

5. *See Bisso v. Inland Waterways Corp.*, 349 U.S. 85, 91, 75 S.Ct. 629, 99 L.Ed. 911 (1955).

*Queen,* 708 F.2d at 1490 (noting but not resolving "the applicability of a limitation provision to gross negligence").

■■■ The first inquiry is whether Royal raised a triable issue as to Southwest's gross negligence. *See id.* Because the court's jurisdiction is grounded in admiralty, the court "look[s] to the common law in considering maritime torts." *Su v. M/V SOUTHERN ASTER,* 978 F.2d 462, 472 (9th Cir.1992) (looking to Washington law for elements of fraud in admiralty case originating in that state). California law defines "gross negligence" as "the want of even scant care or an extreme departure from the ordinary standard of conduct." *Kearl v. Board of Med. Quality Assurance,* 189 Cal.App.3d 1040, 236 Cal.Rptr. 526, 534 (Cal.Ct.App.1986) (internal quotations and citations omitted). Black's Law Dictionary defines "gross negligence" as "[t]he intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another; such a gross want of care and regard for the rights of others as to justify the presumption of willfulness and wantonness." *Black's Law Dictionary* 1185 (4th ed.1968); *accord La Esperanza,* 124 F.3d at 19 (defining gross negligence as "harm wilfully inflicted or caused by gross or wanton negligence"). Case law from this circuit indicates "gross negligence" is simply a "point[ ] on a continuum of probability," *Vision Air Flight Serv. Inc. v. M/V Nat'l Pride,* 155 F.3d 1165, 1176 n. 13 (9th Cir.1998), and its presence "depends on the particular circumstance of each case." *Todd Shipyards,* 674 F.2d at 411.

■■■ The particular circumstances of this case present a colorable claim of gross negligence. Viewed in the light most favorable to Royal,[6] the evidence would support a finding that Southwest intentionally used SUNAIR as a "test weight" for the

newly-repaired crane even though: (1) the crane was damaged in the first place during an attempted lift of SUNAIR; (2) the crane had not been properly certified and returned to service following the repairs; (3) SUNAIR's captain had given express instructions to Southwest not to use the yacht as the test weight; and (4) Southwest's boat yard supervisor gave SUNAIR's captain specific assurances that "all testing of the crane would be done before SUNAIR was lifted." On this evidence, a rational trier of fact could conclude that Southwest's conduct constituted an extreme departure from the standard of reasonable care.

■■■ Because Royal raised a triable issue of fact with as to whether Southwest was grossly negligent, we must determine whether the limitation provisions in these contracts exclude liability for such negligence. Some policy considerations weigh against excluding gross negligence from an exculpatory clause.[7] The Supreme Court has held that the common law tradition of distinguishing degrees of care produces "inconsistent and diverse results" and is "foreign to [admiralty law's] traditions of simplicity and practicality." *Kermarec v. Compagnie Generale Transatlantique,* 358 U.S. 625, 631–32 & n. 10, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959) (holding that ship owners have a duty of exercising "reasonable care" to protect passengers regardless of status as invitee or licensee). Differentiating simple negligence from gross negligence arguably would offend these same interests. Moreover, the policy that originally led the Ninth Circuit to enforce exculpatory provisions in ship repair contracts-freedom of contract-weighs in favor of extending the unqualified exculpatory provisions in these contracts to gross negligence. *See Hall–Scott Motor Car Co. v.*

---

**6.** *See Akiyama Corp. of America v. M.V. Hanjin Marseilles,* 162 F.3d 571, 573 (9th Cir. 1998) (evidence must be viewed in light most favorable to party opposing summary judgment).

**7.** *See generally* Daniel B. MacLeod, *The Use and Enforceability of Exculpatory (Red Letter) Clauses in Ship Repair Contracts,* 6 U.S.F. Mar. L.J. 473, 492–500 (1994).

*Universal Ins. Co.*, 122 F.2d 531, 536 (9th Cir.1941).

We are persuaded, however, that a party to a maritime contract should not be permitted to shield itself contractually from liability for gross negligence. This position is endorsed by the First and Fifth circuits, *see La Esperanza*, 124 F.3d at 19; *Todd Shipyards*, 674 F.2d at 411, supported by sound public policy, *see* Rest. (2d) Contracts § 195(1) & cmt. a (1979) ("A term exempting a party from tort liability for harm caused intentionally or recklessly is unenforceable on grounds of public policy.... The law of torts imposes standards of conduct for the protection of others against unreasonable risk of harm. One cannot exempt himself from such liability for harm that is caused either intentionally or recklessly."), and consistent with well-settled principles of contract law, *see* 6A *Corbin on Contracts* § 1472 (1962 ed. & Supp.1999) ("It is generally held that those who are not engaged in public service may properly bargain against liability for harm caused by their ordinary negligence; but such an exemption is always invalid if it applies to harm wilfully inflicted or caused by gross or wanton negligence."); 8 *Williston on Contracts* § 19:23 (4th ed. 1998) ("An attempted exemption from liability for ... a future willful or grossly negligent act is generally held void...."); Prosser & Keeton, *Torts* § 68, at 484 (5th ed.1984) ("such agreements generally are not construed to cover the more extreme forms of negligence, described as willful, wanton, reckless or gross"). A rule reflecting these commonly-understood contract principles preserves the "simplicity and practicality" of admiralty law. *Kermarec*, 358 U.S. at 631–32, 79 S.Ct. 406.

We conclude that the exculpatory clauses do not shield Southwest from liability for gross negligence and, a fortiori, do not shield Southwest from liability for intentional misconduct. Royal may pursue its claims against Southwest for gross negligence and intentional misrepresentation.[8] The remaining claims were properly dismissed.

### III.

After the district court granted summary judgment in favor of Southwest, Royal sought leave to file a third amended complaint containing additional claims against Southwest for trespass, conversion, and bailment, and negligence claims against American Rigging and Accredited. The district court denied Royal's motion. American Rigging and Accredited then moved for judgment on the pleadings, on the ground that Royal's complaint failed to state a claim against them. The district court granted the motion, dismissing American Rigging and Accredited with prejudice. Royal argues the district court (1) abused its discretion in denying Royal's motion to file a third amended complaint, and (2) erred by granting judgment on the pleadings.

### A.

"A district court's denial of leave to amend is reviewed for an abuse of discretion, keeping in mind the strong policy in favor of allowing amendment, and considering four factors: bad faith, undue delay, prejudice to the opposing party, and the futility of amendment." *Kaplan v. Rose*, 49 F.3d 1363, 1370 (9th Cir.1994).[9] "[L]ate amendments to assert new theories are not reviewed favorably when the

---

8. Southwest contends that Royal's claims are barred by an array of other clauses in the repair order, including a "time limit on all claims" and a "waiver of subrogation." Like the exculpatory clauses, these are limitation provisions, *see M/V American Queen*, 708 F.2d at 1487, which are not effective as to gross negligence or intentional misconduct.

9. The court also may consider whether the plaintiff previously amended the complaint. *See DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 n. 3 (9th Cir.1987).

facts and the theory have been known to the party seeking amendment since the inception of the cause of action." *Acri v. International Assoc. of Machinists & Aerospace Workers,* 781 F.2d 1393, 1398 (9th Cir.1986).

■ Royal's proposed third amended complaint did nothing more than reassert an old theory of liability based on previously-known facts. Royal had knowledge of the relevant facts from the inception of the lawsuit. Its second amended complaint, filed on October 29, 1996, contained allegations regarding Southwest's use of SUNAIR as a test weight. Thus, the "newly-discovered" evidence-a statement by Southwest that the use of SUNAIR as a test weight fell outside the scope of the contract-was actually known to Royal *no later than* October 29, 1996. Considering that Royal had twice before amended its complaint and moved to amend a third time only after the district court dismissed its claims on summary judgment, the district court did not abuse its discretion by denying Royal's motion to amend. *See Stein v. United Artists Corp.,* 691 F.2d 885, 898 (9th Cir.1982) (no abuse of discretion in denying motion to file amended complaint where complaint was submitted after district court granted defendants' motions to dismiss, and plaintiff "provided no satisfactory explanation for [its] failure to fully develop his contentions originally, and the amended complaint was brought only to assert new theories, if anything, and was not premised upon new facts.").

### B.

The district court dismissed third-party defendants American Rigging and Accredited because (1) neither third-party complaint contained specific language demanding judgment in favor of Royal as required by Rule 14(c), and (2) Royal's complaint alleged claims solely against Southwest, and "any liability as to American [Rigging] and [Accredited] was eliminated when summary judgment was granted in Southwest's favor."

### 1.

■ Rule 14(c) governs third-party practice in admiralty and maritime cases. If the third-party plaintiff in admiralty "demand[s] judgment against the third-party defendant in favor of the plaintiff," the action "shall proceed as if the plaintiff had commenced it against the third-party defendant as well as the third-party plaintiff." Fed.R.Civ.P. 14(c). However, "[i]t is unclear what language is necessary for the third-party plaintiff to 'demand' judgment against the third party defendant in favor of the plaintiff." 29 *Moore's Federal Practice* § 704.06[1], at 704–74 (3d ed.1998). Some courts demand strict compliance with the "demand" language of the rule, *see, e.g., Northern Contracting Co. v. C.J. Langenfelder & Son, Inc.,* 439 F.Supp. 621, 623 n. 1 (E.D.Pa.1977); others take a more lenient approach, *see, e.g., Riverway Co. v. Trumbull River Servs., Inc.,* 674 F.2d 1146, 1154 (7th Cir.1982).

In *Riverway Co.,* the plaintiff alleged that its barge sunk as a result of the defendant's negligence. The defendant filed a third party complaint disclaiming its own fault and alleging that the sinking of the barge "occurred as a result of the primary and active fault, negligence and carelessness of [the third party defendant]," and praying that "according to ... Rules 4 and 14(c) ... Third Party Defendant ... appear and answer this Third Party Complaint and answer the Complaint of the Plaintiff." *Id.* at 1148, 1154. The Seventh Circuit held these allegations sufficient to satisfy Rule 14(c)'s demand language:

[W]e believe the unmistakable meaning of this language was to designate [the third party defendant] as a defendant to [the plaintiff's] complaint. Thus, the district court properly applied Rule 14(c) and was correct in treating this action as if [the plaintiff] had commenced it directly against [the defendant] and [the

third party defendant] as joint defendants.

*Id.* at 1154–55.

Like the Seventh Circuit, we have not interpreted Rule 14(c)'s demand language rigidly. In *Campbell Industries, Inc. v. Offshore Logistics International,* 816 F.2d 1401 (9th Cir.1987), we held that Rule 14(c) was satisfied by a third-party complaint praying that the third party defendant "make its defenses and answer directly to the claims of the Plaintiff...." *Id.* at 1406. This holding properly reflects "the liberal third party practice" embodied in Rule 14(c). *General Marine Constr. Corp. v. United States,* 738 F.Supp. 586, 587 (D.Mass.1990) ("Fed.R.Civ.P. 14(c) ... reflects one of the prominent aspects of the admiralty procedure, the liberal third party practice." (alterations omitted, quoting 6 Wright, Miller & Kane, *Federal Practice and Procedure* § 1465 (1990))).

■ Neither of the third-party complaints in this case contained specific language "demand[ing] judgment against the third-party defendant in favor of [Royal]." Fed.R.Civ.P. 14(c). However, both specifically and repeatedly referred to Rule 14(c). Both were captioned "Third Party Complaint [F.R.Civ.P. 14(c) ]" (brackets in originals), and both prayed that "the Third Party Defendant answer and respond to the complaint of Royal Insurance Company *in accordance with Rule 14(c).*" (Emphasis added.) Both explained how and why the third-party was directly liable to Royal. Southwest's complaint alleged that American Rigging "sold the wire rope to [Southwest] and reeved said wire onto the crane upon which it failed allegedly causing damage to [Royal] as set forth in [Royal's] complaint," and that the damage to SUNAIR "w[as] caused by the faulty workmanship and negligence of the third party defendant, American Rigging." Similarly, American Rigging's complaint alleged that Accredited "breached basic industry standards of care while conducting the aforesaid certification tests, and that such conduct acted as an immediate

and proximate cause of the damage alleged in [Royal's] complaint...." American Rigging and Accredited filed answers to Royal's complaint "[i]n accordance with" and "pursuant to" Rule 14(c), respectively.

■ Rule 14(c) "is to be liberally construed." 8 *Benedict on Admiralty* § 2.01[E] (1998). The "unmistakable meaning" of the language in the third-party complaints was to designate American Rigging and Accredited as defendants to Royal's complaint. *Riverway Co.,* 674 F.2d at 1154. This was sufficient to satisfy Rule 14(c)'s demand language.

2.

■ The district court entered judgment on the pleadings in favor of American Rigging and Accredited because Royal's complaint alleged claims "solely against Southwest." Royal contends it was not required to make specific allegations against the third-party defendants. We agree.

Rule 14(c) provides that the third-party action "shall proceed as if the plaintiff had commenced it against the third-party defendant as well as the third-party plaintiff." Fed.R.Civ.P. 14(c). This provision creates a "direct relationship" between the plaintiff and the third-party defendant:

Rule 14(c) provides that defendant may implead a party "who may be wholly or partially liable, either to the plaintiff or to the third-party plaintiff...." This language specifically preserves defendant's traditional right to demand judgment directly in favor of plaintiff and against the third-party defendant. In such a case, the rule states that "the third-party defendant shall make any defenses to the claims of the plaintiff ... and the action shall proceed as if the plaintiff had commenced it directly against the third-party defendant as well as the third-party plaintiff." As a consequence, *plaintiff is forced to assert his claims directly against the third-party defendant. This is to be distinguished*

*from practice under Rule 14(a), which does not automatically establish a direct relationship between plaintiff and the third-party defendant upon the assertion of a third-party claim.*

6 Wright & Miller, *Federal Practice and Procedure*, § 1465, at 483–85 (1990) (emphasis added).

The direct relationship created by Rule 14(c) between Royal and the third-party defendants required Royal to assert its claims directly against those parties, thereby avoiding "a separate suit for contribution or repetitious pleadings and testimony on the part of the plaintiff and the third-party plaintiff...." *Riverway Co.,* 674 F.2d at 1154 (quoting *Ohio River Co. v. Continental Grain Co.,* 352 F.Supp. 505, 512 (N.D.Ill.1972)).

In *Riverway Co.,* a third-party defendant was found directly liable to the plaintiff under Rule 14(c) where the third-party complaint alleged that the injury "occurred as a result of the primary and active fault, negligence and carelessness of [the third-party defendant]...." 674 F.2d at 1148. In this case, the third-party complaints explained in detail how the third-party defendants' lack of care damaged SUNAIR: American Rigging allegedly "sold the wire rope to [Southwest] and reeved said wire onto the crane upon which it failed allegedly causing damage to [Royal] as set forth in [Royal's] complaint," and thus the damage to SUNAIR "w[as] caused by the faulty workmanship and negligence of the third party defendant, American Rigging." Similarly, Accredited allegedly "breached basic industry standards of care while conducting the aforesaid certification tests, and that such conduct acted as an immedi-

ate and proximate cause of the damage alleged in [Royal's] complaint...."

The third-party complaints directed American Rigging and Accredited to answer Royal's complaint, which they did. Each filed an answer to Royal's complaint, disclaiming responsibility for SUNAIR's damage and asserting numerous affirmative defenses to Royal's claims. Neither exhibited any difficulty understanding the nature of the allegations against them. The parties themselves treated this action as if Royal had commenced it against Southwest, American Rigging, and Accredited as joint defendants.

Nonetheless, American Rigging and Accredited claim that Royal was required to amend its complaint to assert specific claims against them. If this contention were correct, "either a separate suit for contribution or repetitious pleadings and testimony on the part of the plaintiff and the third-party plaintiff would be necessary in the original trial. Such cannot be the meaning of Rule 14(c). The rule provides instead that the third-party plaintiff may demand judgment against the third party defendant in favor of the plaintiff and shall be construed as meaning precisely that. [Royal] is thus entitled to recover its damages from both [Southwest] and [American Rigging and Accredited]." *Ohio River Co. v. Continental Grain Co.,* 352 F.Supp. 505, 512–13 (N.D.Ill.1972).[10]

Judgment on the pleadings was improper.

### IV.

The district court's order granting summary judgment in favor of Southwest and

---

**10.** *See also Rodi Yachts, Inc. v. National Marine, Inc.,* 984 F.2d 880, 882 (7th Cir.1993) (plaintiff could recover against third-party defendant who "was not named as a defendant in the plaintiffs' complaint, or for that matter in any other pleading by the plaintiffs" because "in an admiralty suit, once a defendant impleads a third party in an effort to shift the burden of liability in whole or part from its own shoulders, and demands judgment in favor of the original plaintiff against that third party, the suit proceeds as if the original plaintiff had sued the third party"); *Home Ins. Co. v. Puerto Rico Maritime Shipping Authority,* 524 F.Supp. 541, 545–46 (D.P.R.1981) (plaintiff could recover against third-party defendant under Rule 14(c); however, "[h]ad this case not been a case in admiralty, plaintiff's case would have been disposed of solely by the dismissal of its claims against the defendants and third-party plaintiffs").

its order denying Royal's motion to amend its complaint are AFFIRMED, except that Royal may pursue its claims against Southwest for gross negligence and intentional misrepresentation. The order granting judgment on the pleadings in favor of American Rigging and Accredited is REVERSED. This matter is REMANDED for proceedings consistent with this opinion.