**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CLEVO CO., a Taiwan Corporation,
*Plaintiff-Appellant*,

v.

HECNY TRANSPORTATION, INC., a
California Corporation,
*Defendant-Appellee*.

No. 11-55823

D.C. No.
2:09-cv-09135-
MMM-MAN

OPINION

Appeal from the United States District Court
for the Central District of California
Margaret M. Morrow, District Judge, Presiding

Argued and Submitted
January 9, 2013—Pasadena, California

Filed April 26, 2013

Before: Alfred T. Goodwin and William A. Fletcher,
Circuit Judges, and Edward R. Korman, Senior District
Judge.[*]

Opinion by Judge Goodwin

---

[*] The Honorable Edward R. Korman, Senior District Judge for the U.S. District Court for the Eastern District of New York, sitting by designation.

## SUMMARY[**]

### Maritime Law

Affirming the district court's summary judgment in an admiralty action filed by a seller of computer parts, the panel held that misdelivery claims against a freight forwarder were barred by a one-year limitations period set forth in bills of lading.

The panel held that a guarantee, which established no express statute of limitations, was initially effective to place the seller and the freight forwarder in direct contractual privity. That initial relationship was modified when the bills of lading issued. By operation of a *Himalaya* clause, the benefit of the one-year statute of limitations in the bills of lading was extended beyond the non-vessel-operating common carrier that issued the bills of lading to the freight forwarder, an agent of the carrier.

### COUNSEL

Mitra M. Eskandari-Azari and Cassandra Hooks, Alston & Bird LLP, Los Angeles, California; Yitai Hu and Elizabeth H. Rader, (argued) Alston & Bird LLP, Menlo Park, California, for Plaintiff-Appellant.

Andrew D. Kehagiaras, Roberts & Kehagiaras LLP, Long Beach, California, for Defendant-Appellee.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## OPINION

GOODWIN, Senior Circuit Judge:

Clevo Company appeals the district court's grant of summary judgment in favor of Hecny Transportation, Inc. We affirm.

## I.  BACKGROUND

### A.  CLEVO'S SALES AGREEMENT WITH AMAZON

Clevo is a Taiwan-based manufacturer of computer parts and accessories.  In 2007, Clevo and a Brazilian entity, Amazon PC Industria e Comerciao de Microcomputadores, LTDA ("Amazon"), agreed that Clevo would manufacture and sell, and Amazon would buy, millions of dollars' worth of Clevo computer parts.  Clevo and Amazon also agreed that the parts would be delivered to Amazon in multiple shipments; that Amazon would take delivery of each shipment in Brazil; and that Amazon would pay for each shipment in installments.  The first installment, 10% of the shipment's price, would be paid pre-manufacture; another 20% installment would be paid before Clevo arranged shipment; and the remaining 70% balance would be paid after shipment but before Amazon took possession of the parts.

To protect its interest in receiving full payment, Clevo insisted that after it released a particular shipment for international carriage, Clevo would retain the original bills of lading for that shipment while awaiting Amazon's final 70% payment. Clevo and Amazon agreed that a shipment of parts would not be released to Amazon unless Amazon presented the original bills of lading.

**B. THE HECNY GROUP**

Under Clevo and Amazon's negotiated terms, the Hecny Shipping Group ("Hecny Group") was designated to handle all of the contract shipments.  The Hecny Group's members include multiple separate entities:

**(1) Hecny Shipping, Limited ("Hecny Shipping").** Hecny Shipping is a non-vessel-operating common carrier ("NVOCC") based in Hong Kong, China.  NVOCCs are "middlemen who typically arrange for relatively small shipments to be picked up from shippers, consolidate the . . . parcels, and ship them via a carrier or several carriers." Schoenbaum, *Admiralty & Maritime Law* (5th ed. 2012) § 7-7; *see also Kukje Hwajae Ins. Co. v. M/V Hyundai Liberty*, 294 F.3d 1171, 1176 (9th Cir. 2002), *vacated on other grounds by Green Fire & Marine Ins. Co. v. M/V Hyundai Liberty*, 543 U.S. 985 (2004).

**(2) Hecny Transportation, Inc. ("Hecny Transportation").**   Hecny Transportation is a freight forwarder with operations in Miami.  A "freight forwarder acts as an intermediary between [a] shipper and [an] ocean carrier." Schoenbaum, *Admiralty & Maritime Law* § 7-7; *see also Constructores Tecnicos v. Sea-Land Serv., Inc.*, 945 F.2d 841 (5th Cir. 1991).

**(3) Hecny Transportation (Shanghai) Limited ("Hecny Shanghai").**  Hecny Shanghai is a China-based entity that takes delivery of Shanghai-originating shipments for the Hecny Group.

**(4) HTI Transportes Internacionais Ltda. ("Hecny Brazil").**  Hecny Brazil is a Manaus, Brazil-based freight

forwarder. Hecny Transportation maintained Hecny Brazil as its agent in Brazil, and Hecny Brazil maintained Hecny Transportation as its agent outside Brazil.

## C.  THE GUARANTEE

In May 2007, Clevo began sending numerous shipments of computer parts to Amazon, and the parts were delivered without incident.  But at the end of 2007, Clevo took additional measures to protect its right to payment and to formalize Hecny Transportation's role in the delivery process.

To that end, Clevo sent a document denominated "Guarantee Letter" to Hecny Transportation on December 21, 2007.  The document stated:

> We (Clevo Co.) will give sea shipments over to your agent in Shanghai (Hecny Shipping Limited) . . . .

> . . . .

> In order to protect Clevo's right of ownership, we request you to sign [*sic*] a guarantee letter which contains as following:

> If you release any sea shipment to Amazon PC without our further notice, Hecny Transportation, Inc.-MIA must compensate Clevo all damage which we suffer.

> For the purpose of protecting your right, on[] the other hand, provided that Clevo agree[s] to release sea shipment[s] to Clevo's customer,

> Clevo will give you a notice by fax, and please work[] in accordance with International Transportation Rule.
>
> Unless Clevo propose[s] a written notice to terminate this letter, the Parties have caused [it] to be executed . . . .

Notably, the text of the letter lacks any reference to a contractual statute of limitations or any other significant provisions limiting the parties' liability. But those omissions did not prevent Hecny Transportation from giving assent. Instead, a Hecny Transportation employee signed the letter and returned the signed copy (the "Guarantee") to Clevo.

After receiving the Guarantee, Clevo made multiple additional shipments of parts to Amazon between January 2008 and September 2008. Although the Hecny Group completed each of those shipments without any apparent difficulty, it would fare much worse when handling Clevo's next shipment, in October 2008.

## D. SHIPPING THE GOODS

### 1. Clevo prepares the Goods and Hecny Shipping issues the Bills of Lading.

In October 2008, Clevo received an Amazon order for an additional $2,210,000 in parts (the "Goods"), as well as Amazon's pre-shipment payments. After manufacturing the Goods, Clevo delivered them to Hecny Shanghai for transport on or about October 23, 2008. Four days later, Hecny Shipping issued two bills of lading for the shipment (the "Bills of Lading").

Each of the Bills of Lading includes a front and back page.  The front pages describe:

- the Goods;
- the name of the shipper ("CLEVO CO.");
- the consignee, Amazon;
- the port of loading and destination ("SHANGHAI" and "MANAUS", respectively); and
- the delivery agent ("HECNY TRANSPORTATION, INC. - MIA").

The back pages contain numerous Terms and Conditions of Contract ("Terms and Conditions").

Section 5 of the Terms and Conditions includes a *Himalaya* clause (the "*Himalaya* Clause"), which provides that:

> [Hecny Shipping] shall be entitled to sub contract on any terms the whole or any part of the carriage . . . and any and all duties whatsoever . . . . [E]very such servant, agent and sub contractor shall have the benefit of all provisions herein for the benefit of [Hecny Shipping] as if such provisions were expressly for their benefit . . . .

*Himalaya* clauses are commonly used in bills of lading.  *See Mori Seiki USA, Inc. v. M.V. Alligator Triumph*, 990 F.2d 444, 450 (9th Cir. 1993); *Norfolk S. Ry. v. James N. Kirby, Pty Ltd.*, 543 U.S. 14, 31–32, 20 n.2 (2004); *Adler v. Dickson* (*The Himalaya*) [1954] 2 Lloyd's Rep. 267; [1955] 1 Q.B. 158 (C.A.).

Additionally, Section 21 of the Terms and Conditions states that Hecny Shipping "shall [be] discharged from all liability in respect of non-delivery[,] misdelivery[,] delay[,] loss[,] or damage unless suit is brought within 1 year after delivery of the Goods."

Clevo received the original Bills of Lading on or about October 27, 2008, and retained them, as Amazon had yet to pay the remaining 70% of the Goods' purchase price.

### 2. The Goods are transported and released.

At or around the time that Hecny Shipping issued the Bills of Lading, the Goods began their transit to Brazil. Hecny Shanghai arranged an initial sea transportation segment, during which the Goods traveled from Shanghai to Los Angeles. After the Goods arrived in Los Angeles, Hecny Transportation booked their motor transport to Miami, unloaded them, and staged them for air transportation between Miami and Manaus. Hecny Transportation then arranged for carrier Arrow Air, Inc. ("Arrow Air") to complete the Goods' final air transportation segment via two flights. For both flights, Hecny Transportation issued its own "house" air waybill, as well as a "master" air waybill on behalf of Arrow Air (the "Waybills").

Soon after the Goods arrived in Manaus, Hecny Transportation forwarded the Waybills to Hecny Brazil, and Hecny Brazil released those Waybills to Amazon. With the Waybills in hand, Amazon took delivery of the Goods in November 2008.

Hecny Brazil concedes that it never required Amazon to present the Bills of Lading prior to taking possession of the

Goods.  For its part, Clevo never provided the Bills of Lading to Amazon and Clevo never notified any Hecny Group entity that it could release the Goods.  Instead, Clevo retained the Bills of Lading while awaiting the final 70% balance of the Goods' purchase price.

### 3.  Clevo discovers the improper delivery.

By January 2009, Clevo still had not received payment and emailed Hecny Transportation to ensure that the Goods were still being held.  To Clevo's apparent surprise, a Hecny Transportation employee responded that the "sh[i]p[men]ts were moved to Manaus . . . . I have not received any request to hold the [shipments] in Miami."

Despite taking delivery of the Goods, Amazon never forwarded the outstanding purchase price to Clevo and instead filed for bankruptcy.  On December 11, 2009, more than one year after the initial misdelivery to Amazon, Clevo sued numerous Hecny Group entities for the unpaid remainder of the Goods' purchase price.

## II.  DISCUSSION

### A.  JURISDICTION AND STANDARD OF REVIEW

The district court correctly concluded that it had original jurisdiction under 28 U.S.C. § 1333, and we have jurisdiction under 28 U.S.C. § 1291.  We review orders granting summary judgment *de novo*, *see Bamonte v. City of Mesa*, 598 F.3d 1217, 1220 (9th Cir. 2010), and therefore apply "the same principles as the district court:  whether, with the evidence viewed in the light most favorable to the non-moving party, there are no genuine issues of material fact, so that the

moving party is entitled to a judgment as a matter of law." *Id.* (internal quotation marks omitted).

## B.  APPLICATION

Viewing the evidence in the light most favorable to Clevo, the record reflects that Hecny Transportation and its agent, Hecny Brazil, were required to obtain the original Bills of Lading from Amazon prior to releasing the Goods.  And there is no dispute that the relevant Hecny entities never obtained those documents.  Nevertheless, Hecny Transportation's liability to Clevo turns not on any failure in delivery but instead on the applicable statute of limitations. Put differently, because Clevo filed suit more than one year after the improper delivery, the central question is whether Clevo's claims are governed by the Guarantee, which establishes no express statute of limitations, or the Bills of Lading, which establish a one-year limit on suit.

We conclude that the Guarantee was initially effective to place Clevo and Hecny Transportation in direct contractual privity, without any contractually-created statute of limitations.  But that initial relationship was modified when the Bills of Lading issued.  Section 21 of the Terms and Conditions supplemented the terms of the Guarantee and created an express limitations period, providing that Hecny Shipping "shall [be] discharged from all liability in respect of . . . misdelivery . . . unless suit is brought within 1 year after delivery of the Goods."

By operation of the *Himalaya* Clause, the benefit of the one-year statute of limitations in the Bills of Lading extended beyond Hecny Shipping to Hecny Transportation as well. *See M.V. Alligator Triumph*, 990 F.2d at 450; *Kirby*, 543 U.S. at

31–32. And because Hecny Transportation has asserted that provision in defense to suit, Clevo's claims are time-barred. We explain our reasoning in greater detail below.

### 1. The Guarantee was effective *ab initio* between Clevo and Hecny Transportation.

We first consider the nature and effect of the Guarantee. Hecny Transportation contends that the document cannot be considered a valid contract between it and Clevo, because the requisite elements of contract formation are absent here. Not so.

Basic principles in the common law of contracts readily apply in the maritime context. *See Kirby*, 543 U.S. at 23 ("federal common law . . . appl[ies]" where contract suit is "under. . . admiralty jurisdiction"); *Yang Ming Mar. Transp. Corp. v. Okamoto Freighters Ltd.*, 259 F.3d 1086, 1092 (9th Cir. 2001) ("familiar principles of contract interpretation govern" construction of maritime bill of lading). And the Guarantee presents the requisite elements of offer, acceptance, and consideration. *See* RESTATEMENT (SECOND) OF CONTRACTS §§ 17, 22, 24, 50.

Clevo made an offer by explaining proposed terms of conduct on its own letterhead; "request[ing]" Hecny Transportation "to sign" the document as a means of assent; and sending the document to Hecny Transportation. Hecny Transportation tendered an acceptance by signing the Guarantee and returning it to Clevo. And the parties' mutual assent accompanied a mutual exchange of promises as consideration. Viewing the Guarantee in the light most favorable to Clevo, *see Bamonte*, 598 F.3d at 1220, Clevo promised Hecny Transportation that, among other things, it

would provide future Amazon-destined shipments to Hecny Shanghai and Hecny Transportation. Clevo also vested in Hecny Transportation a direct breach-of-contract claim if Clevo failed to perform. In return, Hecny Transportation promised not to "release any sea shipment to Amazon . . . without [Clevo's] further notice" and to compensate Clevo for an improper release. Therefore, the signed Guarantee established a valid contract. As of December 2007, Clevo and Hecny Transportation were directly bound to an agreement that prescribed specific delivery instructions for Clevo's shipments but lacked any contractual statute of limitations.

However, ten months after the Guarantee was executed, Hecny Shipping issued the Bills of Lading.

## 2. The Bills of Lading supplemented the Guarantee.

The Bills of Lading, which directly bind Clevo,[1] describe a multifaceted, multimodal shipment of the Goods between Shanghai and Manaus, and provide additional details about the roles of Hecny Transportation and other Hecny Group entities during transport. The *Himalaya* Clause makes clear that Hecny Shipping is "entitled to sub contract on any terms the whole or any part of the carriage . . . and any and all duties whatsoever undertaken . . . in relation to the Goods," and the Clause also grants Hecny Shipping's agents and subcontractors "the benefit of all provisions [in the Bills] for the benefit of [Hecny Shipping] as if such provisions were expressly for their benefit." Moreover, the front page of each Bill of Lading describes a "Delivery Agent . . . Hecny

---

[1] Clevo does not argue that it is not bound by the terms of the Bills of Lading.

Transportation, Inc.-MIA," thereby further confirming that agents would be involved in handling Clevo's shipment. Thus, where the Guarantee provided a general outline of the relationship between Clevo and Hecny Transportation, the Bills of Lading supplement that outline, explain a division of labor, and identify Hecny Transportation's role in that division of labor.

In addition to providing these details, however, the Bills of Lading also add an express statute of limitations for shipping-related suits. Under the terms of Section 21, suits against Hecny Shipping for non-delivery, delay, loss, misdelivery, or damage to the Goods must be filed, if at all, within one year after delivery.[2]

### 3. The *Himalaya* Clause extends Hecny Shipping's one-year statute of limitations to Hecny Transportation.

Although the express language of Section 21 protects only Hecny Shipping from untimely suits, the *Himalaya* Clause extends the benefits of the one-year limitation to Hecny Transportation as well.

We previously explained that *Himalaya* clauses are "commonly used to extend a carrier's defenses and liability limitations to certain third parties performing services on its

---

[2] The terms of the Bills of Lading expressly permit Hecny Shipping to amend pre-existing contracts to which it was a stranger. In Section 5 of the Terms and Conditions, Hecny Shipping represented that it executed the Bills of Lading "not only on its own behalf but also as agent and trustee for [its] servants, agents, and sub contractors." Neither Clevo nor Hecny Transportation has attacked the validity of this agency representation.

behalf," *M.V. Alligator Triumph*, 990 F.2d at 450, and the Supreme Court has recently addressed *Himalaya* clauses in *Kirby*. *Kirby* teaches that where, as here, a *Himalaya* clause "indicates an intent to extend the [carrier's] liability limitation broadly" and describes the carrier's servants, agents, and subcontractors, there is "no reason to contravene the clause's obvious meaning," and the carrier's defenses should be extended to those servient parties. 543 U.S. at 31–32; *see also Kawasaki Kisen Kaisha Ltd. v. Regal-Beloit Corp.*, 130 S. Ct. 2433, 2439 (2010); *M.V. Alligator Triumph*, 990 F.2d at 450–51 (reviewing *Himalaya* clause and extending carrier's liability limitations to agent). Because: (1) the *Himalaya* Clause expressly permits "every . . . servant, agent and sub contractor [to] have the benefit of all provisions . . . for the benefit of" Hecny Shipping; (2) the one-year statute of limitations is such a provision; and (3) Hecny Transportation is such an agent, Hecny Transportation is thereby entitled to assert Section 21's time-bar.

### 4.  Clevo's claims are time-barred.

Hecny Transportation's error in releasing the Goods to Amazon without first obtaining the original Bills of Lading is a misdelivery. *See C-ART, Ltd. v. Hong Kong Islands Lines Am., S.A.*, 940 F.2d 530, 533 (9th Cir. 1991) ("if the carrier delivers the goods to one other than the authorized holder of the bill of lading, the carrier is liable for misdelivery") (internal alterations and quotation marks omitted). And the Bills of Lading specifically bar all suits for "misdelivery . . . unless suit is brought within 1 year after delivery of the Goods." Because Clevo did not file suit against Hecny Transportation until December 11, 2009, more than one year after the misdelivery occurred, Clevo's claims are time-barred.

### III.  CONCLUSION

The district court correctly granted summary judgment to Hecny Transportation.

**AFFIRMED.**