**CROWLEY MARINE SERVICES, INC., Plaintiff,**

v.

**VIGOR MARINE LLC, Defendant.**

**Case No. C12–2240 MJP.**

United States District Court, W.D. Washington, at Seattle.

Signed Jan. 27, 2014.

Molly J. Henry, Robert Joseph Bocko, Jensen S. Mauseth, Keesal Young & Logan, Seattle, WA, for Plaintiff.

Daniel F. Knox, Schwabe Williamson & Wyatt, Portland, OR, Claire L. Been, Colin Jeffrey Folawn, Noah Jarrett, Schwabe Williamson & Wyatt, Seattle, WA, for Defendant.

## ORDER ON MOTIONS FOR PARTIAL SUMMARY JUDGMENT

MARSHA J. PECHMAN, Chief Judge.

This matter is before the Court on cross motions for partial summary judgment by Defendant Vigor Marine Services, Inc. ("Vigor") and Plaintiff Crowley Marine LLC ("Crowley"). (Dkt. Nos. 68, 71). The Parties have stipulated as to liability and the issue before the Court is the scope of the remedy. (Dkt. No. 53.) The Court GRANTS in part and DENIES in part each motion as discussed below.

### Background

This case arises out of the destruction of the ocean going tug INVADER. (Dkt. No. 1 at 2.) Crowley was owner and opera-

tor of INVADER. (*Id.* at 1.) At all material times, Vigor was engaged in the ship repair business. (*Id.* at 2.) Crowley solicited bids to repair INVADER from Vigor and other shipyards in January of 2012. (Dkt. No. 79–8.) Crowley first sent a solicitation with information regarding Invader Class tugs, of which the INVADER was a member. (Dkt. No. 79–1 at 2.) This solicitation did not contain any additional terms or conditions. (*Id.*) Crowley later sent a solicitation specific to the tug INVADER, which contained a "Terms and Conditions" section. (Dkt. No. 76–2 at 2.) Vigor representative Mark Donohue submitted Vigor's bid on the INVADER repair, stating Crowley had sent two different "standard specifications" and the bid was based on the first one. (Dkt. No. 84–1 at 1.) The bid did not include any reference to the "Terms and Conditions" contained in the solicitation. (*Id.*)

Vigor's bid was accepted by delivery of the tug. In early March 2012 INVADER arrived at the yard designated by Vigor, owned by Vigor's wholly-owned subsidiary Everett Shipyards, Inc. ("ESI"). (*Id.* at 2.) INVADER entered a drydock to have Vigor perform repairs. (*Id.*) On March 18, 2012, the floating drydock collapsed and sank by its starboard wing wall. (Dkt. No. 1 at 2.) The sinking of the drydock caused INVADER to break loose and fall starboard, flood, and partially submerge, causing extensive damage. (*Id.* at 2.) At the time INVADER was lost, the commissioned repair work was nearly complete. (Dkt. No. 71 at 7.) After INVADER was righted and sent pier side, it rested at ESI until Crowley retook possession. (Dkt. No. 72–3 at 5.) Vigor representative Adam L. Beck testified security and wharfage fees for INVADER were charged to ESI. (*Id.* at 9.)

On October 4, 2012, this Court granted the Parties' stipulation and entered an Order stating Vigor materially breached its vessel repair contract with Crowley and breached the warranty of workmanlike performance implied under that contract. (Dkt. No. 53 at 1.) The Order notes Vigor does not dispute it is liable to Crowley for the fair market value of the INVADER, but the parties otherwise do not agree on the scope of the remedy. (*Id.*) On November 18, 2013, Vigor submitted a motion for partial summary judgment requesting the Court rule (1) the INVADER was a constructive total loss ("CTL") and Crowley's damages are limited by the maritime CTL rule; and (2) Crowley cannot bring a declaratory judgment claim regarding liabilities to third parties. (Dkt. No. 68 at 2, 20.) Later that day, Crowley submitted a motion for partial summary judgment, asking the Court to rule (1) Vigor's tort theory affirmative defense of the CTL rule is inapplicable and Crowley may recover contract damages; (2) Vigor is not entitled to credit for expenses incurred by it or ESI; and (3) Vigor is contractually liable to Crowley for attorney's fees. (Dkt. No. 71 at 2.) The motions are considered together.

### *Analysis*

I. Formation of a Maritime Contract, Controlling Terms, and Attorneys' Fees

Admiralty jurisdiction extends to a claim involving a vessel undergoing repairs in a drydock. *North Pacific S.S. Co. v. Hall Bros. Marine R. & Shipbuilding Co.*, 249 U.S. 119, 128, 39 S.Ct. 221, 63 L.Ed. 510 (1919). When a contract is a maritime contract and the dispute is not inherently local, federal law controls contract interpretation. *Norfolk Southern Ry. v. James N. Kirby, Pty. Ltd.*, 543 U.S. 14, 23, 27, 125 S.Ct. 385, 160 L.Ed.2d 283 (2004). "Basic principles in the common law of contracts readily apply in the maritime context." *Clevo Co. v. Hecny Transportation, Inc.*, 715 F.3d 1189, 1194 (9th

Cir.2013). The Ninth Circuit looks to the RESTATEMENT (Second) OF CONTRACTS to determine the basic elements of contract law. *Id.*

The requisite elements of contact formation are offer, acceptance, and consideration. *Id.* Crowley advertised for bids to repair its tugs, and Vigor submitted a bid. The Parties dispute what constitutes the terms of the offer: the request for bids or the bid itself. Crowley asserts the rules applicable to auctions apply, which state, "bids at an auction embody terms made known by the advertisement, posting or other publication of which bidders are or should be aware, as modified by any announcement made by the auctioneer when the goods are put up." RESTATEMENT (Second) OF CONTRACTS § 28(2). In an auction, "the auctioneer invites offers from successive bidders which he may accept or reject." *Id.* at (1)(a). In the comments to § 28, at (c), advertisements for bids are discussed. The comment likens but does not equate a request for bids to an auction, stating, "The rule in such cases is much like that governing auctions-unless a contrary intention is manifested, the advertisement is not an offer but a request to make offers[.]" One maritime case says in a finding and without explanation that a contract for repair consisted of the "invitation to bid with repair specifications . . . [the] bid, and [the] letter . . . awarding the job to [the bidder]." *Garza v. Marine Transport Lines, Inc.,* 861 F.2d 23, 25 (2nd Cir.1988). In *Garza* the contents of the invitation for bids is not at issue, and the extent to which the contents of the invitation were incorporated into the contract is not discussed.

■ While there may be some similarities, a request for bids is distinct from an auction. Black's Law Dictionary defines an "auction" as "a public sale of property to the highest bidder by one li-

censed and authorized for that purpose." BLACK'S LAW DICTIONARY 130 (6th ed.1990). A request for bids, especially in the bids for service context, does not fit this description. The general rule in the request for bids context is that the bid itself is the offer, not the request for bids. *See, United States ex rel. Goldberg v. Daniels,* 231 U.S. 218, 221, 34 S.Ct. 84, 58 L.Ed. 191 (1913).

■ Here, Vigor's bid is the offer and the indemnity clauses in Crowley's request for bids are not incorporated. Crowley could have insisted on a formal contract, but it did not. Instead it accepted by delivery based on Vigor's bid. (Dkt. No. 71 at 15.) The cases mainly relied on by Crowley, *M/V American Queen v. San Diego Marine Constr. Corp.,* 708 F.2d 1483 (9th Cir.1983) and *Morton v. Zidell Explorations, Inc.,* 695 F.2d 347, 349 (9th Cir. 1982), are inapposite to its argument because in each case there was a clear written contract. In contrast, there is no written contract here and the communications between the Parties indicate there is no meeting of the minds as to the inclusion of the indemnity clauses in their agreement. Because the indemnity clauses are not part of the contract, the American rule for attorneys' fees applies and each party will bear its own fees and costs. Crowley's motion for the Court to enforce the indemnity clauses and for attorneys' fees is DENIED.

## II. Application of the Constructive Total Loss Rule

■ A ship repairer "potentially faces three sources of liability for repairs he performs improperly on a vessel. He may be liable in contract for a breach of his expressly assumed obligations or for a breach of an implied warranty of workmanlike performance . . . [and he] may also be liable for the maritime tort of

negligence." *La Esperanza de P.R. v. Perez y Cia. de P.R.,* 124 F.3d 10, 17 (1st Cir.1997). The Parties agree there was a contractual agreement between them even in the absence of a formally executed document. (Dkt. No. 77 at 9.) The parties dispute whether Plaintiff may recover under general contract and warranty law or the tort rule of constructive total loss. (Dkt. No. 71 at 18; Dkt. No. 77 at 19–20.) The CTL rule is generally a collision rule, but "courts have applied it where barges under tow have been damaged or lost because of the inattention of the tug ..." *A & S Transp. Co. v. The Tug Fajardo,* 688 F.2d 1, 2 (1st Cir.1982). Towage cases have been distinguished from other maritime contracts. In *Hall–Scott Motor Car Co. v. Universal Ins. Co.,* the Ninth Circuit held "with the exception of common carriers dealing with goods or persons being transported such as common carrier and contracts for towage, the right of private parties to contract as they please will be sustained by federal courts." 122 F.2d 531, 537 (9th Cir.1941).

The CTL rule has been referenced in cases for repair involving a contract, but only where the contract "unequivocally limit[ed] recovery to contractually specified damages; therefore, it exclude[ed] consequential damages." *Tucker Energy Servs. v. Hydraquip Corp.,* 2007 WL 2409571, *3, 2007 U.S. Dist. LEXIS 61201, *7 (S.D. Texas Aug. 20, 2007). Vigor also relies on *Cashman Equip. Corp. v. Rozel Operating Co.,* which is inapposite because the contract at issue obligated the defendant to pay "until [the vessel] was declared a constructive total loss." 2013 WL 3759709, 2013 U.S. Dist. LEXIS 98617 (M.D.La. July 15, 2013). Vigor fails to cite any case law applying the CTL rule to a non-towing case where there was a contract, and the contract did not expressly exclude consequential damages or limit damages to the CTL rule.

■ Crowley relies heavily on *E. River S.S. Corp. v. Transamerica Delaval,* in which the Supreme Court analyzed whether a cause of action in tort is stated when a defective product purchased in admiralty law malfunctions, injuring only the product itself and causing only economic loss. 476 U.S. 858, 859, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986). This case was not about contracts; the Court was deciding whether to incorporate products liability concepts into general maritime law. *Id.* at 865, 106 S.Ct. 2295. In this context, the Court found warranty law and the law of contract was preferable to tort for resolving this type of dispute. The Court said by "giving recognition to the manufacturer's bargain, warranty law sufficiently protects the purchaser by allowing it to obtain the benefit of its bargain. The expectation damages available in warranty for purely economic loss give a plaintiff the full benefit of its bargain by compensating for foregone business opportunities." *Id.* at 873, 106 S.Ct. 2295 (internal citations omitted). This language indicates intent that traditional rules of contract apply where there is an actual contract, or where a product in a commercial exchange is faulty and causes purely economic loss.

■ In *M/V American Queen v. San Diego Marine Constr. Corp.,* the Ninth Circuit notes it is "settled" admiralty law that "parties to a repair contract may stipulate that the shipowner is to assume all liability for all damage occasioned by the negligence of the shipyard." 708 F.2d 1483, 1488 (9th Cir.1983). In admiralty, "absent evidence of overreaching, clauses limiting liability in ship repair contracts will be enforced." *Id.* While one could argue the enforceability of exculpatory clauses in admiralty contracts does not necessarily mean the CTL rule is inapplicable, the more plausible interpretation is

that contract law applies to maritime contracts, to the exclusion of tort rules. In fact, consequential damages have been found appropriate in the context of a ship repair contract in the Ninth Circuit. In *Ildhuso Fisheries, Inc. v. Nichols Bros. Boat Builders, Inc.,* the Ninth Circuit found the parties "could have negotiated, but did not [contract for] a global preclusion of consequential damages flowing from any work done ... [.]" 1 Fed.Appx. 659, 661 (9th Cir.2001). The Court finds the CTL rule does not limit liability for a violation of the ship repair contract at issue here, and contract law provides the appropriate measure of damages. Vigor's motion for summary judgment on this issue is DENIED and Crowley's is GRANTED.

### III. Viability of Declaratory Judgment Claim

The Declaratory Judgment Act allows a court to recognize a plaintiff's right even where no immediate enforcement is sought, and further relief based on the declaratory judgment may be granted whenever necessary or proper. *Great Lakes Dredge & Dock Co. v. Huffman,* 319 U.S. 293, 300, 63 S.Ct. 1070, 87 L.Ed. 1407 (1943). To determine whether declaratory judgment is appropriate, a district court must determine (1) whether an actual case or controversy exists, and (2) whether the court should exercise its discretion to award declaratory relief. *Principal Life Ins. Co. v. Robinson,* 394 F.3d 665, 669 (9th Cir.2005).

"[T]he appropriate standard for determining ripeness of private party contract disputes is the traditional ripeness standard, namely, whether 'there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Id.* at

671, *quoting Maryland Cas. Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941). In determining whether a district court should exercise its discretion to issue a declaratory judgment the court should consider the factors set out in *Brillhart v. Excess Ins. Co.,* 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942). *Principal Life Ins. Co.,* 394 F.3d at 669. The *Brillhart* factors state, "(1) the district court should avoid needless determination of state law issues, (2) it should discourage litigants from filing declaratory judgment actions as a means of forum shopping, and (3) it should avoid duplicitous litigation." *Id.* at 672 (citations omitted). The 9th Circuit laid out additional factors, including (1) whether the judgment will serve a useful purpose in clarifying and settling the legal relations at issue, (2) whether it will afford relief from the uncertainty, insecurity and controversy giving rise to the proceeding, (3) whether it will settle all aspects of the controversy, (4) whether it is being sought for procedural fencing or to obtain a res judicata advantage, (5) whether it will result in entanglement between the federal and state court systems, (6) convenience of the parties, and (7) availability and convenience of other remedies. *Principal Life Ins. Co.,* 394 F.3d at 672.

The Parties agree there are no currently pending third party claims, so there is not a sufficient case or controversy at this point to allow the declaratory judgment action. No third party claim may ever arise, and Crowley admits future third party claims are remote at this point. (Dkt. No. 80 at 19.) To the extent Crowley already paid on third party claims, those costs will be subsumed in contract damages. Vigor's motion on this point is GRANTED and Crowley's motion is DENIED.

## IV. Off-sets and Contract Damages

In general, the right to off-set "allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding the absurdity of making A pay B when B owes A." *Citizens Bank v. Strumpf,* 516 U.S. 16, 18, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995). Off-sets, which are often applied in the bankruptcy context, require mutuality: debts in the same right and between the same parties, standing in the same capacity. *Newbery Corp. v. Fireman's Fund Ins. Co.,* 95 F.3d 1392, 1398–99 (9th Cir.1996). The right of off-set is permissive and rests in the discretion of the court, applying general principles of equity. *Id.* at 1399. However, having found contract remedies are appropriate in this case, a discussion of off-sets is not necessary or appropriate because contract remedies address the concerns of the Parties.

Under general contract law as stated in the RESTATEMENT (Second) OF CONTRACTS § 347, Crowley is entitled to "(a) the loss in the value to [it] of the other party's performance caused by its failure or deficiency, plus (b) any other loss, including incidental or consequential loss, caused by the breach, less (c) any cost or other loss that [it] has avoided by not having to perform." See, *Ildhuso Fisheries,* 1 Fed. Appx. at 661. To the extent Vigor argues it should recover costs for storage and security for the time ESI stored the IN-VADER after it was righted, under the rules of contract they would only be able to recover costs Crowley could have avoided. Vigor caused INVADER to sink, and they cannot be reimbursed for the time they had to store the tug to the extent the amount of time was reasonable. If Crowley unreasonably delayed retrieving the sunken tug, there may be recoverable damages.

However, Crowley argues because ESI bore the costs of storage and security, Vigor has no right to recover these losses. Vigor argues it can recover costs incurred by ESI because due to "their structure and relationship, Vigor Industrial and its subsidiary Vigor Marine have suffered damages born by its former subsidiary, ESI." (Dkt. No. 77 at 21.) Essentially, Vigor argues ESI is Vigor's "alter ego." "The alter ego doctrine requires that the controlling corporate entity exercise total domination of the subservient corporation, to the extent that the subservient corporation manifests no separate corporate interests of its own and functions solely to achieve the purposes of the dominant corporation." *Kilkenny v. Arco Marine, Inc.,* 800 F.2d 853, 859 (9th Cir.1986)(internal citations omitted). "Corporate separateness is respected unless doing so would work injustice upon an innocent third party." *Id.*

E–Mails between Vigor and ESI employees indicate the billing and finances for Vigor and ESI are separate. (Dkt. No. 72–4 at 3–5.) Vigor's response to Crowley's motion itself states "The repair-work on the INVADER was performed at a drydock owned by ESI and Vigor has demonstrated its intent to assign all losses resulting from the incident to ESI." (Dkt. No. 77 at 21.) This indicates the two are separate entities which, while related by corporate parentage, are not interchangeable. Vigor argues Crowley takes an inconsistent position by suing Vigor and not ESI for the loss of INVADER if Vigor cannot recover for ESI's losses. (*Id.*) This is not the case. Crowley is correct in arguing the contract at issue was with Vigor, not ESI. (Dkt. No. 83 at 10.) Further, Vigor confirmed in the Joint Status Report presented to this Court that it is the only proper defendant. (Dkt. No. 14 at 8.) Vigor's request for off-set is DENIED.

## Conclusion

Based on the analysis above, the Court DENIES in part and GRANTS in part Crowley's motion for partial summary judgment and Vigor's motion for partial summary judgment, and finds as follows:

(1) The remedy in this case will be determined by the law of contract;

(2) Crowley's indemnity clauses are not part of the contract;

(3) Damages are not limited by the constructive total loss rule;

(4) No off-set will be awarded;

(5) Each party will bear its own fees and costs;

(6) Crowley's Declaratory Judgment action is dismissed as unripe.

The clerk is ordered to provide copies of this order to all counsel.